UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ARTHUR S. WEISSBRODT, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 07-52890-ASW |
| | ) Chapter 11 |
| | ) |
| THE BILLING RESOURCE, dba | ) <u>VIA TELEPHONE:  FINAL</u> |
| Integretel, a California | ) <u>HEARING on EMERGENCY</u> |
| corporation, | ) <u>MOTION for USE of CASH</u> |
| | ) <u>COLLATERAL and GRANTING</u> |
| Debtor. | ) <u>REPLACEMENT LIENS, by</u> |
| | ) <u>DEBTOR; and SUPPLEMENTAL</u> |
| | ) <u>OPPOSITIONS</u> |
| | ) |
| | ) Tuesday, October 16, 2007 |
| | ) San Jose, California |

<u>Appearances</u>:

| | |
|---|---|
| For the Debtor: | Michael H. Ahrens, Esq. |
| | Steven B. Sacks, Esq. |
| | Sheppard Mullin Richter & Hampton |
| | Four Embarcadero Center, 17th Floor |
| | San Francisco, California  94111 |
| | |
| For the Federal Receiver: | Walter K. Oetzell, Esq. |
| | Danning, Gill, Diamond & Kollitz, LLP |
| | 2029 Century Park East, Third Floor |
| | Los Angeles, California  90067-2904 |
| | |
| | Jeffrey Schneider, Esq. |
| | Tew Cardenas, LLP |
| | Four Seasons Tower, 15th Floor |
| | 1441 Brickell Avenue |
| | Miami, Florida  33131-3407 |
| | |
| From the Federal Trade Commission: | Collot Guerard, Esq. |
| | Julie Mack, Esq. |
| | 600 Pennsylvania Avenue, N.W. |
| | Washington, D.C.  20580 |
| | |
| For Creditor Thermo Credit LLC: | Dolores Cordell, Esq. |
| | Clark & Trevithick, PLC |
| | 456 Montgomery Street, 20th Floor |
| | San Francisco, California  94104 |

Appearances continued on next page.

Appearances continued:

| | |
|---|---|
| For PaymentOne Corporation: | Victoria A. Newmark, Esq.<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, California  90071-2899 |
| For POL, Inc.: | Kathryn S. Diemer, Esq.<br>Diemer Whitman & Cardosi, LLP<br>75 East Santa Clara Street, Suite 290<br>San Jose, California  95113-1806 |
| For United Online: | Jeff Garfinkle, Esq.<br>Craig Chiang, Esq.<br>Buchalter Nemer<br>333 Market Street, Twenty-Fifth Floor<br>San Francisco, California  94105-2130 |
| For Personal Voice: | Thomas C. Little, Esq.<br>Law Offices of Thomas C. Little<br>2123 N.E. Coachman Road, Suite A<br>Clearwater, Florida  33765 |
| For Creditor Thermo Credit LLC: | W. Timothy Miller, Esq.<br>Taft Stettinius & Hollister<br>425 Walnut Street, Suite 1800<br>Cincinnati, Ohio  45202 |
| For Creditor Public Communications Services, Inc.: | Enid M. Colson, Esq.<br>Liner, Yankelevitz, Sunshine & Regenstreif, LLP<br>1100 Glendon Avenue, 14th Floor<br>Los Angeles, California  90024-3503 |
| For the Committee: | John D. Fiero, Esq.<br>Pachulski Stang Ziehl Young & Jones<br>3 Embarcadero Center, Suite 1020<br>San Francisco, California  94111-5994 |
| Digital Court Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Erin Coyle<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5003 |
| Certified Electronic Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California  95336-9124 |

Proceedings recorded by digital recording; transcript produced by federally-approved transcription service.

```
 1  Tuesday, October 16, 2007                    1:59 o'clock p.m.
 2                    P R O C E E D I N G S
 3          THE COURT:  This is the case of The Billing Resource.
 4  I'm going to take appearances and I'll call your names.
 5          THE OPERATOR:  Your Honor, I'm sorry.  I didn't
 6  realize we were actually starting.  Let me bring them live.
 7  Quite a few attorneys here.
 8          Okay, go ahead, Your Honor.
 9          THE COURT:  This is the case of The Billing Resource.
10  I'm going to take appearances and I will call out the names.
11          Michael Ahrens.
12          MR. AHRENS:  Yes, Your Honor.  Present.
13          THE COURT:  May I have your formal appearance, please?
14          MR. AHRENS:  Yes, Your Honor.  Michael Ahrens and
15  Steven Sacks of Sheppard Mullin Richter and Hampton, appearing
16  for the debtor.
17          THE COURT:  John Fiero.
18          MR. FIERO:  Good afternoon, Your Honor.  John Fiero of
19  Pachulski Stang appearing for the committee.
20          THE COURT:  Katie Diemer.
21          MS. DIEMER:  Kathryn Diemer, appearing on behalf of
22  Secured Creditor POL.
23          THE COURT:  Walter Oetzell.
24          MR. OETZELL:  Walter Oetzell of Danning, Gill, Diamond
25  and Kollitz, appearing upon — appearing on behalf of the federal
```

1  receiver.
2       THE COURT:  Howard Kollitz.
3       MR. OETZELL:  I'm appearing for Howard.  He's not
4  here.
5       THE COURT:  Who was that?
6       MR. OETZELL:  Howard Kollitz is an attorney with our
7  firm.
8       THE COURT:  No, no.  Who —
9       MR. OETZELL:  This is Walter Oetzell.
10      THE COURT:  Oh, that's what I needed.
11      MR. OETZELL:  Yes, sir.
12      THE COURT:  Because the record wouldn't recognize —
13      MR. OETZELL:  I understand.
14      THE COURT:  Craig Chang.
15      MR. CHANG:  I'm Craig Chang, Buchalter Nemer, and I'm
16 making an appearance, Your Honor.
17      THE COURT:  Enid Colson.
18      MS. COLSON:  Enid Colson of Liner, Yankelevitz,
19 appearing on behalf of Creditor Public Communications Services,
20 Inc.
21      THE COURT:  Anthony Franco?  Anthony Franco?
22      (No audible response.)
23      THE COURT:  Thomas Little.
24      MR. LITTLE:  Thomas Little appearing on behalf of
25 Personal Voice, Inc.

1   THE COURT: Dolores Cordell.
2   THE OPERATOR: Your Honor, Ms. Cordell should be
3   dialing in soon.
4   THE COURT: You'll let me know.
5   THE OPERATOR: Yes.
6   THE COURT: Jeff Garfinkle.
7   MR. GARFINKLE: Yes, Your Honor. Jeff Garfinkle of
8   Buchalter Nemer appearing on behalf of United Online.
9   THE COURT: Jeffrey Schneider.
10  MR. SCHNEIDER: Good afternoon, Your Honor. Jeff
11  Schneider, Tew Cardenas in Miami on behalf of the federal
12  receiver.
13  THE COURT: Victoria Newmark.
14  MS. NEWMARK: Victoria Newmark, O'Melveny and Myers,
15  appearing on behalf of PaymentOne.
16  THE COURT: Timothy Miller.
17  MR. MILLER: W. Timothy Miller, Taft, Stettinius and
18  Hollister, on behalf of Thermo Credit, LLC.
19  THE COURT: Collot Guerard. Collot Guerard.
20  THE OPERATOR: Your Honor, —
21  MS. GUERARD: Collot Guerard appearing on behalf of
22  the Federal Trade Commission. And with me is another attorney,
23  Julie Mack.
24  THE COURT: Thank you.
25  Is there anybody else on the phone whose name I have

1  not called?
2          MS. CORDELL:  Yes, Your Honor.  Dolores Cordell for
3  Thermo Credit.
4          THE COURT:  Yes.  I actually did call your name but
5  you weren't on when I called it.
6          MS. CORDELL:  Yes.
7          THE COURT:  Very good.
8          THE OPERATOR:  Your Honor, we also have Mr. Franco.
9  He was there when you called his name, but you just didn't hear
10 anything.  Possibly his phone was on mute.
11         THE COURT:  Please state your appearance, sir.
12         THE OPERATOR:  Mr. Franco, your line is live, but
13 we're not hearing anything.
14         THE COURT:  Anthony Franco, are you on the line?
15     (No audible response.)
16         THE COURT:  Operator, he's not on the line.
17         THE OPERATOR:  Okay.  His line just disconnected.  He
18 must be having technical difficulties.
19         THE COURT:  All right.  Will you dial out to him
20 again, please?
21         THE OPERATOR:  I sure will.
22         THE COURT:  All right.  Is there anybody else on the
23 line?
24     (No audible response.)
25         THE COURT:  Very good.

1                THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

2                THE COURT:  As I mentioned, I was going to give my

3       oral findings of fact and conclusions of law in support of my

4       decision to grant interim use of cash collateral to the debtor.

5       The purpose of this telephonic hearing is merely for the Court

6       to state its findings of fact and conclusions of law orally on

7       the record.

8                Before the Court is debtor's motion for final use of

9       cash collateral.  However, pursuant to debtor's papers filed on

10      October 11th, 2007, debtor seeks authority from this Court for a

11      further interim use of cash collateral through November 2, 2007,

12      when this Court has set a further hearing on this motion.

13               Debtor currently seeks authority to use cash

14      collateral on an interim basis, pursuant to debtor's proposed

15      budget for the next three weeks and pay its 97-percent-owned

16      subsidiary nearly 1.6 million during that time in exchange for

17      debtor's stipulated use of that creditor's cash collateral.

18               Numerous creditors have filed objections to debtor's

19      motion.  Debtor has resolved the objections of the United States

20      Trustee; POL, P-O-L, Inc.; and the receiver.

21               The parties do not dispute the legal standard, that

22      is, pursuant to Bankruptcy Code Section 363(c)(2), debtor may

23      use cash collateral with the consent of an entity that has an

24      interest in that cash collateral or upon authorization of the

25      Court after notice and a hearing.  If the Court authorizes the

use of cash collateral, under Bankruptcy Code Section 363(e), this Court must condition such use on the providing of adequate protection to any entity requesting such adequate protection.

Under Bankruptcy Code Section 361, adequate protection requires that debtor grants a replacement lien or other such relief such that the use of cash collateral does not decrease any entity's interest in that cash collateral.

The parties dispute first whether or not certain entities are even required to be provided adequate protection, the debtor and the Creditors' Committee taking the position that the objectors, the remaining objectors, are not secured creditors at all and are not entitled to adequate protection; and, in addition, second, whether it is in the best interests of creditors and debtor's bankruptcy case to permit the interim use of cash collateral under the current cash collateral stipulation with PaymentOne.

The objection of Public Communication Services, which I will refer to as PCS, argues that there is no evidence before the Court regarding whether PaymentOne holds a perfected security interest in debtor's assets. Debtor filed the Declaration of Evan Meyer in relation to the September 26th hearing regarding the support for PaymentOne's security interest.

In the Meyer Declaration Meyer declares that PaymentOne has lent debtor approximately $6.4 million since

1  PaymentOne filed its amended UCC-1 financing statement and
2  PaymentOne is secured to the amount of this new value, as that
3  term is understood in bankruptcy law.
4     Based on the record before the Court, the Court finds
5  that it is highly likely that PaymentOne is a secured creditor
6  in the amount of at least $6.4 million; and debtor's proposal to
7  pay PaymentOne nearly $1.6 million on account of the billing
8  transactions submitted prepetition is not likely to be a
9  preference of one unsecured creditor over another, at least up
10 to the amount of 6.4 million.  And the Court notes the first
11 amended cash collateral stipulation caps those payments at
12 approximately $4.1 million.
13    Additionally, debtor argues and has submitted
14 declarations testifying that PaymentOne is either in the process
15 of being sold or will be incorporated into a plan of ongoing
16 operations for the debtor, as explained by counsel for the
17 debtor on the record at the October 15th hearing, and that
18 PaymentOne depends heavily on payments from debtor to fund
19 PaymentOne's operations.
20    Moreover, debtor depends heavily on billing
21 transactions submitted by PaymentOne to provide ongoing revenue
22 to the debtor.
23    The Court finds based on the record before the Court,
24 including but certainly not limited to the analysis done by —
25 done by and reported to the Court by the Unsecured Creditors'

1  Committee, that PaymentOne is a valuable asset of debtor's
2  bankruptcy estate them that it is in the interests of debtor and
3  debtor's creditors to ensure that PaymentOne retains its value,
4  especially at this critical time in this bankruptcy case.
5       The Court finds that it is in the best interests of
6  debtor's bankruptcy estate and debtor's creditors to approve the
7  further interim payment of the nearly $1.6 million to PaymentOne
8  under the current cash collateral stipulation, especially in
9  light of the fact that PaymentOne has agreed to continue
10 providing billing transactions to debtor sufficient to cover any
11 postpetition payments made to PaymentOne.
12      Thermo Credit asserts that debtor holds the accounts
13 receivable in trust for Thermo Credit such that the accounts
14 receivable are not property of the debtor's bankruptcy estate,
15 citing *FTC versus Crittenden*, 823 F.Supp. 699 at 703, Central
16 District of California, 2003.
17      The Ninth Circuit and California courts have
18 consistently held that a party seeking to establish a trust over
19 commingled funds must trace those funds, as the term "trace" is
20 used in the constructive trust cases.  *In re Advent Management*
21 *Corp.*, 178 B.R. 480 at 491, Ninth Circuit BAP 1995.
22      Here there is no dispute that the funds held by the
23 debtor are commingled.  To trace commingled funds, the test is
24 the lowest intermediate balance test.  Thermo Credit has not
25 made any effort to trace any funds over which there may be an

alleged constructive trust.

On the record before the Court, there is no basis to deny debtor's interim use of cash collateral on the improbable, even remote possibility that there may be a constructive trust over the funds.

FTC asserts that because the Florida District Court has found that the "reserve" funds, which the Court will refer to as the "subject funds," to be turned over to the receiver under the Florida District Court's omnibus order, are property of the receivership estate and not property of the debtor. That this Court shall therefore deny the final use of cash collateral and require the debtor to turn over $1.7 million that is the subject of that order.

Since the supplemental opposition of the FTC was filed, debtor has amended its application to seek another three-week interim use of cash collateral and delay debtor's request for final approval of debtor's use of cash collateral until November 2nd, 2007. The parties agree that the subject funds — and those are funds that this Court pursuant to the agreement of counsel ordered held, shall remain in the blocked account until the hearing on the preliminary injunction on October 17, this Wednesday. Pursuant to that agreement, FTC is adequately protected and FTC's objection is overruled for the present time.

Disputed secured creditors PCS and Personal Voice

1  object to debtor's use of cash collateral even for three weeks.
2  Both PCS and Personal Voice assert a security interest in
3  debtor's assets.  In addition, Personal Voice objects to
4  debtor's permanent use of cash collateral to the extent that
5  such request fails to recognize Personal Voice's ownership of
6  Personal Voice's accounts receivable.
7           Personal Voice asserts that when the accounts
8  receivables were forwarded to debtor for collection, the
9  proceeds of collection remained the property of Personal Voice
10 and were not transferred to the debtor.
11          Personal Voice requests that debtor's further use of
12 cash collateral be conditioned on debtor placing $40,000 aside
13 per week into a segregated account for the benefit of Personal
14 Voice.  PCS requests that debtor's further use of cash
15 collateral be conditioned upon debtor placing $14,000 aside per
16 week into a segregated account for the benefit of PCS.
17          It appears very likely to the Court, based on the
18 record before the Court, that neither PCS nor Personal Voice
19 hold a valid security interest in debtor's assets.  Rather, it
20 appears that both creditors only really assert a security
21 interest in the net proceeds owed to those respective creditors.
22 And debtor argues that there is no security interest in such net
23 proceeds.
24          Under Bankruptcy Code Section 363(p), PCS and Personal
25 Voice each have the burden of proof on the issue of the

1  validity, priority, and extent of that respective creditor's
2  interest in debtor's property.  Based on the record before the
3  Court, neither PCS nor Personal Voice has met that burden.
4        In any event, debtor proposes to grant each creditor a
5  replacement lien in the same assets, if any, that each of these
6  creditors had an interest in prepetition as adequate protection
7  for any alleged security interest.
8        The Court finds that the granting of the replacement
9  lien adequately protects both PCS and Personal Voice for the
10 next three weeks of debtor's further interim use of cash
11 collateral and the Court overrules PCS' request for continued
12 segregation of funds in the amount of 14,000 per week and
13 Personal Voice's request for segregation of funds in the amount
14 of $40,000 per week.  Debtor's proposed budget shows sufficient
15 cashflow to adequately protect these creditors for the next
16 three weeks.
17       Finally, Thermo Credit asserts a security interest in
18 debtor's assets by virtue of a security agreement with one of
19 debtor's major-owned — majority-owned subsidiaries, Inmate
20 Calling Solutions LLC, which the Court will refer to as ICS.
21       Thermo Credit factors accounts receivable by various
22 telecommunication companies through ICS.  Thermo Credit asserts
23 that pursuant to its security agreement with ICS, Thermo Credit
24 holds a security interest in debtor's property and requests that
25 this Court segregate the funds at issue until the Court is able

1   to evaluate the ownership interests in those funds at issue.
2           The Court has reviewed the documents submitted
3   regarding Thermo Credit's alleged security interest.  Thermo
4   Credit's UCC-1 financing statement is for ICS' receivables only.
5   There is no UCC-1 financing statement as to receivables of the
6   debtor and there's no indication in the record that Thermo
7   Credit holds a security interest in debtor's property.
8           The Court agrees with debtor's analysis at pages 13
9   and 14 of debtor's Memorandum of Points and Authorities filed on
10  October 11th, 2007 that, based on the record before the Court,
11  Thermo Credit does not hold a valid security interest in
12  debtor's property.  Thermo Credit has not met its burden under
13  Bankruptcy Code Section 363(p).  And there is no basis to
14  require debtor to provide adequate protection for any alleged
15  use of Thermo Credit's cash collateral.
16          For all of the above reasons the Court holds that
17  nonconsenting secured creditors are adequately protected.  The
18  Creditors' Committee consents to a further interim use of cash
19  collateral.  The Court finds that there is a likelihood of
20  successful reorganizing.  The Court finds that debtor's
21  continued use of cash collateral is in the best interests of
22  creditors and debtor's bankruptcy estate.  Debtor's request for
23  further interim use of cash collateral pursuant to the current
24  stipulation with PaymentOne is granted.
25          Now just to clarify, it's my understanding that to the

1  extent that Thermo Credit ultimately were able to prove up a
2  security agreement, that they would be entitled to the same
3  replacement lien now.  Isn't that your position, Mr. Ahrens?
4          MR. AHRENS:  Yes, Your Honor.
5          THE COURT:  Thank you.
6          With that clarification, court is adjourned.
7          MR. OETZELL:  Your Honor?  Your Honor?
8          THE COURT:  Yes.  Who's speaking?
9          MR. OETZELL:  Walter Oetzell.  Just — I am not asking
10 you to change any of the substantive ruling, but just a point of
11 clarification here.  You had stated early that the receiver and
12 the debtor settled the receiver's objection.  That is not the
13 case.  Mr. Sacks offered something in settlement and Mr. Ahrens
14 pulled it back.  I think it's probably best dealt with this as
15 being the same as the FTC's objection.
16         THE COURT:  Is that your understanding, Mr. Ahrens?
17         MR. AHRENS:  Yes, Your Honor.
18         THE COURT:  That's fine.  That — that clarification is
19 now made.
20         MR. AHRENS:  Thank you, Your Honor.
21         MR. OETZELL:  Thank you, Your Honor.
22         THE COURT:  Thank you.
23         Court is in recess.  Go off the record.
24     (The hearing was adjourned at 2:16 o'clock p.m.)
25                            —o0o—

```
State of California        )
                           )    SS.
County of San Joaquin      )
```

       I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

       I further certify I am not a party to nor in any way interested in the outcome of this matter.

       I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

       Susan Palmer
Palmer Reporting Services

Dated October 26, 2007