1        UNITED STATES BANKRUPTCY COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        (SAN JOSE DIVISION)

4  In re:

5  THE BILLING RESOURCE,            Case No. 07-52890-ASW

6                                   Chapter 11

7                                   San Jose, California
                                    November 2, 2007
8                                   1:51 p.m.

          Debtor.
9  _____/

10

11                 TRANSCRIPT OF PROCEEDINGS
         a) FINAL HEARING RE EMERGENCY MOTION FOR USE OF
12           CASH COLLATERAL AND GRANTING REPLACEMENT
         LIENS AND APPROVING FIRST AMENDED STIPULATION WITH
13         PAYMENTONE CORPORATION REGARDING USE OF CASH
             COLLATERAL AND ADEQUATE PROTECTION BY DEBTOR
14           b) LIMITED SUPPLEMENTAL OPPOSITION BY
                   FEDERAL TRADE COMMISSION
15          c) LIMITED OPPOSITION BY DAVID R. CHASE,
       FEDERAL RECEIVER OF ACCESS ONE COMMUNICATIONS, INC.
16              AND NETWORK ONE SERVICES, INC.
         d) OPPOSITION TO SUPPLEMENTAL MEMORANDUM
17                 BY THERMO CREDIT, LLC
           e) SECOND SUPPLEMENTAL OBJECTION BY
18              PUBLIC COMMUNICATIONS SERVICES
          f) OBJECTION BY UNITED STATES TRUSTEE
19           g) RENEWED OPPOSITION BY POL, INC.
         h) RENEWED OBJECTION BY PERSONAL VOICE, INC.
20      i) REPLY IN SUPPORT OF MOTION BY PAYMENTONE CORP.
         j) NOTICE OF STATUS CONFERENCE IN CHAPTER 11
21      k) MOTION FOR ORDER SUPPLEMENTING ORDER AUTHORIZING
           USE OF EXISTING CASH MANAGEMENT SYSTEM AND
22        BANK ACCOUNTS TO LIMITED EXTENT TO ADDRESS THE
              DEBTOR'S RECEIPT OF FUNDS PERTAINING TO
23     CUSTOMER BILLING TRANSACTIONS SUBMITTED TO THE DEBTOR
       POST-PETITION, TO AUTHORIZE THE DEBTOR TO OPEN CLIENT
24       RESERVE ACCOUNTS, AND TO OPEN ADDITIONAL DEBTOR
              IN POSSESSION BANK ACCOUNTS BY DEBTOR

25

1    l) MOTION FOR ORDER AUTHORIZING DEBTOR AND
     DEBTOR IN POSSESSION TO: (A) PAY PRE-PETITION WAGES AND
2    SALARIES; AND (B) PAY PRE-PETITION EMPLOYEE BENEFITS AND
     OTHERWISE HONOR EMPLOYEE BENEFITS IN THE ORDINARY
3    COURSE OF BUSINESS BY DEBTOR
     m) LIMITED OPPOSITION TO ITEMS k) & l) BY DAVID R. CHASE,
4    FEDERAL RECEIVER OF ACCESS ONE COMMUNICATIONS, INC.
     AND NETWORK ONE SERVICES, INC.
5    n) PARTIAL OPPOSITION TO ITEM l) BY
     OFFICIAL UNSECURED CREDITORS' COMMITTEE
6    o) LIMITED OBJECTION TO ITEM l) BY UNITED STATES TRUSTEE
     p) MOTION FOR ORDER APPROVING STIPULATION WITH
7    RESPECT TO AGREEMENTS BETWEEN THE BILLING RESOURCE
     dba INTEGRETEL AND THE SUBSIDIARIES OF VERIZON
8    COMMUNICATIONS, INC. BY DEBTOR

9

10        BEFORE THE HONORABLE ARTHUR WEISSBRODT
              UNITED STATES BANKRUPTCY JUDGE
11

12
     APPEARANCES:
13

14   For the Debtor:          SHEPPARD, MULLIN, RICHTER and
                              HAMPTON
15                            BY: STEVEN SACKS, ESQ.
                              Four Embarcadero Center, 17th Floor
16                            San Francisco, California 94111

17

18   For the Federal          DANNING, GILL, DIAMOND &
     Receiver:                KOLLITZ, LLP
19                            BY: WALTER K. OETZELL, ESQ.
                              2029 Century Park East, 3rd Floor
20                            Los Angeles, California 90067

21

22   For the U.S. Trustee:    OFFICE OF THE U.S. TRUSTEE
                              BY: JOHN S. WESOLOWSKI, ESQ.
23                            280 South First Street, #268
                              San Jose, California 95113
24

25

```
 1  APPEARANCES (CONTINUED):

 2  For PaymentOne:          O'MELVENY & MYERS, LLP
                             BY: STEPHEN H. WARREN, ESQ.
 3                           400 South Hope Street
                             Los Angeles, California 90071
 4

 5
    For POL, Inc.            DIEMER, WHITMAN and CARDOSI
 6                           BY: KATHRYN S. DIEMER, ESQ.
                             75 East Santa Clara Street
 7                           San Jose, California 95113

 8

 9  For the Committee:       PACHULSKI, STANG, ZIEHL, JONES
                             BY: JOHN FIERO, ESQ.
10                           150 California Street, 15th Floor
                             San Francisco, California 94111
11

12
    For Personal Voice:      THOMAS LITTLE, ESQ.
13
                             (APPEARING TELEPHONICALLY)
14

15
    For BSG Clearing         KING & SPALDING
16  Solutions:               BY: ANDY G. BERG

17                           (APPEARING TELEPHONICALLY)

18

19  For United OnLine:       BUCHALTER NEMER, et al.
                             BY: JEFF GARFINKLE, ESQ.
20
                             (APPEARING TELEPHONICALLY)
21

22  For PCS:                 LINER, YANKELEVITZ, SUNSHINE
                             BY: ENID M. COLSON, ESQ.
23                           1100 Glendon Ave., 14th Floor
                             Los Angeles, California 90024
24
                             (APPEARING TELEPHONICALLY)
25
```

```
 1   APPEARANCES (CONTINUED):

 2
     For the Federal          TEW CARDENAS, LLP
 3   Receiver:                BY: JEFFREY SCHNEIDER, ESQ.

 4                            (APPEARING TELEPHONICALLY)

 5
 6   For the Federal Trade    UNITED STATES FEDERAL TRADE
     Commission:              COMMISSION
 7                            OFFICE OF THE GENERAL COUNSEL
                              BY: JOHN ANDREW SINGER, ESQ.
 8                            600 Pennsylvania Avenue, NW
                              Washington, DC 20580
 9
                                      -and-
10
                              MICHAEL P. MORA, ESQ.
11                            COLLOT GUERARD, ESQ.

12                            (APPEARING TELEPHONICALLY)

13
14   For Laurus Master Fund:  SHEA & CARLYON
                              BY: CANDACE CARLYON, ESQ.
15
                              (APPEARING TELEPHONICALLY)
16
17   For Thermo Credit:       CLARK & TREVITHICK
                              BY: LESLIE R. HOROWITZ, ESQ.
18
                                      -and-
19
                              TAFT STETTINIUS & HOLLISTER
20                            BY: TIMOTHY MILLER, ESQ.

21                            (APPEARING TELEPHONICALLY)

22
23   For Verizon:             AMALL, GOLDEN & GREGORY, LLP
                              BY: DARRYL LADDIN, ESQ.
24
                              (APPEARING TELEPHONICALLY)
25
```

1  APPEARANCES (CONTINUED)

2

   Court Recorder:          ERICA RENDLER
3                           UNITED STATES BANKRUPTCY COURT
                            280 South First Street
4                           San Jose, California 95113

5

6  Transcription Service:   Jo McCall
                            Electronic Court
7                           Recording/Transcribing
                            2868 E. Clifton Court
8                           Gilbert, Arizona 85297
                            Telephone: (480-361-3790)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        P R O C E E D I N G S

2   November 2, 2007                              1:51 p.m.

3                          ---oOo—

4        THE CLERK: Please rise.  This is the United

5   States Bankruptcy Court for the Northern District of

6   California.  The court is now in session.

7        THE COURT: Good afternoon ladies and gentlemen.

8   Please be seated.  Go off the record a minute.

9        This is the case of Billing Resource.  May I have

10  appearances of counsel.

11       MR. SACKS: Good afternoon, Your Honor, Steven

12  Sacks of Sheppard, Mullin for the Debtor.

13       MR. OETZELL: Good afternoon, Your Honor, Walter

14  Oetzell of Danning, Gill, Diamond & Kollitz on behalf of

15  the Federal Receiver, David R. Chase.

16       MR. SINGER: Your Honor, good afternoon.  John

17  Andrew Singer for the Federal Trade Commission.

18       MR. FIERO: John Fiero for the Committee, Your

19  Honor.

20       MR. WARREN: Good afternoon, Your Honor, Stephen

21  Warren of O'Melveny & Myers on behalf of PaymentOne.

22       MS. DIEMER: Kathryn Diemer on behalf of POL.

23       MR. WESOLOWSKI: John Wesolowski for the U.S.

24  Trustee

25       THE COURT: I'm going to call the people on the

1  phone in the following order.  Andy Berg.

2         MR. BERG: Your Honor, this is Andrew Berg on

3  behalf of Billing Services Group from King & Spalding.

4         THE COURT: Jeff Garfinkle?  Jeff Garfinkle?

5         THE OPERATOR: He was connected earlier, Your

6  Honor, and disconnected.

7         THE COURT: Is that the operator?

8         THE OPERATOR: Yes, it is, Your Honor.

9         THE COURT: Call him back.  See if he wants on.

10        THE OPERATOR: Thank you.

11        THE COURT: Candace Carlyon?

12        MS. CARLYON: Good afternoon, Your Honor, Candace

13 Carlyon on behalf of National On Line Services.

14        THE COURT: Thomas Little?

15        MR. LITTLE: Yes, Your Honor, Thomas Little

16 representing Personal Voice, Inc.

17        THE COURT: Enid Colson?

18        MS. COLSON: Good afternoon, Your Honor, Enid

19 Colson of Liner Hankelevitz representing Public

20 Communications Services, Inc.

21        THE COURT: Leslie Horowitz?

22        MS. HOROWITZ: Good afternoon, Your Honor, Leslie

23 Horowitz of Clark & Trevithick on behalf of Thermo Credit.

24        THE COURT: Jeffrey Schneider?

25        MR. SCHNEIDER: Good afternoon, Your Honor, Jeff

1  Schneider, Tew Cardenas in Miami, on behalf of the Federal
2  Receiver.
3          THE COURT: Michael Mora?
4          MR. MORA: Good afternoon, Your Honor, Michael
5  Mora and Collot Guerard on behalf of the Federal Trade
6  Commission.
7          THE COURT: Darryl Laddin?
8          MR. LADDIN: Good afternoon, Your Honor, Darryl
9  Laddin of Amall, Golden & Gregory on behalf of the wholly-
10 owned subsidiaries of Verizon Communications, Inc.
11         THE COURT: Timothy Miller?
12         MR. MILLER: Good afternoon, Your Honor, W.
13 Timothy Miller, Taft, Stettinius & Hollister, on behalf of
14 Thermo Credit, LLC.
15         THE COURT: Is there anybody else on the telephone
16 whose name I have not called?
17         MR. GARFINKLE: Yes, Your Honor, this is Jeff
18 Garfinkle of Buchalter Nemer on behalf of United OnLine.
19         THE COURT: Very good.  I actually called your
20 name twice, Mr. Garfinkle.
21         MR. GARFINKLE: I'm sorry.  The operator didn't
22 click me back into the line.
23         THE COURT: Anybody else on the phone whose name I
24 didn't call?
25         Okay.  Very good.  Good afternoon to all counsel.

1          ALL COUNSEL: Good afternoon.

2          THE COURT:  Mr. Sacks?

3          MR. SACKS: Yes, Your Honor.  We're here today on

4    four motions.  We have a cash collateral motion for further

5    interim use.  We have a request for an order approving a

6    stipulation with the subsidiaries of Verizon.  We have a

7    motion concerning pre-petition employee wages and a motion

8    concerning the Debtor's cash management system and bank

9    accounts.

10          The Verizon motion is unopposed.  We could take

11   that first.  We could take them in any order Your Honor

12   proposes, but I'm at your disposal.

13          THE COURT: Yes, that's fine.

14          MR. SINGER: Your Honor, for the Federal Trade

15   Commission, I'd like to address a couple of comments with

16   the P.I., but I can easily wait until you deal with your

17   other business, if you'd like.

18          THE COURT: I'm going to deal with everything on

19   calendar first.

20          MR. SINGER: That's certainly fine, Your Honor.  I

21   just wanted to make sure it wasn't forgotten.  Thank you.

22          THE COURT: Okay.  We'll just march through, if

23   you would please, Mr. Sacks, and do them in the order that

24   they're on the calendar.  So we're going to first start

25   with cash collateral, and you need a copy of the calendar.

1       MR. SACKS: Somebody just handed me one.  Thank

2   you.  Okay.  So with regard to cash collateral, Your Honor,

3   we have a renewed objection from Personal Voice and renewed

4   objections from the Federal Trade Commission and the

5   Federal Receiver.

6       THE COURT: But the Federal Trade Commission and

7   the Federal Receiver's objection seems to be targeted

8   toward the 1.7 million dollars that my decision is going to

9   keep blocked at least for the time being.  Is there any

10  other objection that you wish to raise at this time?

11      MR. SCHNEIDER: Your Honor, my apologies, but

12  you're cutting out.

13      THE COURT: Okay.  Did you not hear what I said?

14  Do you want me to repeat it?

15      MR. SCHNEIDER: Yes, please.

16      THE COURT: Okay.  Who is this?

17      MR. SCHNEIDER: This is Jeff Schneider.

18      THE COURT: Okay.  I just issued a decision on the

19  request for injunctions, and in that decision I have

20  determined not to unblock for the time being the 1.7

21  million dollars that by stipulation counsel put into a

22  blocked account; ergo, I'm not sure that the Receiver or

23  the FTC has any continued objection to the pending motion

24  for cash collateral, and I want to clarify that.

25      MR. OETZELL: Your Honor, Walter Oetzell.  If my

1  understanding is correct, we have the account preserved to

2  mid December, December I believe it was 14th, with a hearing

3  on December 7th. So that will not be touched. And we also

4  have an interim cash collateral motion or order of two

5  weeks. With that in mind, as long as the funds are

6  preserved and this is of this two-week limited duration,

7  then, you know, we have no objection.

8          THE COURT: And is that true for the FTC as well?

9          MR. SINGER: I believe that is true, Your Honor.

10  We had some other objections as well, but I think you've

11  addressed that by entering your preliminary injunction.

12          THE COURT: Okay. Now, everybody understands that

13  I have declined the Debtor's request to unblock the 1.7

14  million dollars, but it's without prejudice. So there is

15  no guaranty that, for example, if the Eleventh Circuit stay

16  were lifted, the Debtor wouldn't come back to court and ask

17  me to do something different. And at that point, if you

18  wanted to raise whatever you wanted to raise, we would have

19  to consider it at that time. But everybody knows that my

20  order is based on the assumption, at least at this

21  juncture, that the Eleventh Circuit stay is in effect, and

22  of course the Eleventh Circuit is in complete control of

23  that.

24          Okay. So then we just have Personal Voice as I

25  understand it as an objecting party and --

1          MR. SINGER: Your Honor, may I just from the point

2     you just raised?  If you'd like to deal with it later,

3     that's fine, but let me just -- if you'd like to deal with

4     now, that's fine.  Your action, as I understand it, stays

5     the FTC's enforcement action.

6          THE COURT: Yes.

7          MR. SINGER: The Eleventh Circuit appeal which

8     only involves Integretel since Integretel took it, is part

9     of the enforcement action.  Is it your --

10         THE COURT: Stop.  Stop.  Stop.

11         MR. SINGER: Yes, sir.

12         THE COURT:  Say what you said slowly.

13         MR. SINGER: Yes.  There is a combined appeal of

14    the preliminary injunction, the amended preliminary

15    injunction that was made in 2006, the omnibus order of

16    September 14th, and the clarification order of September

17    21st, both 2007, which is pending before the Eleventh

18    Circuit.

19         THE COURT: I see.  Say the first thing again.

20         MR. SINGER: Certainly.  Integretel made a 2006

21    appeal to the Eleventh Circuit of the amended preliminary

22    injunction in the enforcement action, Your Honor.

23         THE COURT: Okay.  But did Integretel -- or let me

24    go back.  Is it your understanding that the Eleventh

25    Circuit has already stayed the full enforcement action as

1  it applies to the Debtor?

2          MR. SINGER: That is incorrect, Your Honor.  The

3  Eleventh --

4          THE COURT: I asked whether it was your

5  understanding -- it can't be incorrect.

6          MR. SINGER: I'm sorry.

7          THE COURT:  Is it your understanding -- it's

8  either a yes or no.  Is it your understanding that the

9  Eleventh Circuit has stayed the enforcement action against

10  the Debtor?

11          MR. SINGER: It has not, Your Honor.

12          THE COURT: Okay.  Well, that's my understanding

13  too.

14          MR. SINGER: But, Your Honor, what I'm asking,

15  Your Honor, is, if I understand your order correctly and

16  perhaps I do not, your injunction of today stays the

17  enforcement action against Integretel.

18          THE COURT: It does.

19          MR. SINGER: Does that -- it would also then stay,

20  if I understand it, the appeal to the Eleventh Circuit.

21          THE COURT: I can't stay an appeal to anybody.

22          MR. SINGER: Okay.  So then the Eleventh Circuit's

23  briefing schedule would still be valid, which is, they have

24  a brief due November 26th, Your Honor.

25          THE COURT: I'm not sure what is on appeal in

1  terms of the enforcement action.  So let me ask Mr. Sacks
2  and I'll come back to you.
3              MR. SINGER: Certainly.
4              THE COURT: In terms of the enforcement -- if I
5  stay the enforcement action, which I did, at your request,
6  does that have any effect on anything that's presently
7  going on in the Eleventh Circuit?
8              MR. SACKS: Well, conceivably it does, Your Honor,
9  because the Debtor has taken two appeals, one as Mr. Singer
10 points out from an earlier order, a 2006 order, and another
11 from the omnibus order that was issued on September 14th,
12 along with the clarification order that followed it.  So if
13 the enforcement action is stayed or if more accurately the
14 FTC is enjoined from proceeding with the enforcement
15 action --
16             THE COURT: That is the better way to say it.
17 That's more correct.
18             MR. SACKS: Right.  -- then conceivably the Debtor
19 could proceed with its appeals in the Eleventh Circuit or
20 the Court could determine that that's not an efficient use
21 of estate resources and include that within the injunction.
22 And this is something that we have not --
23             THE COURT: Nobody has briefed that.
24             MR. SACKS: Exactly.  Nobody has raised that
25 before.

1          THE COURT: So should I start by saying, since it

2     wasn't briefed and not considered by the Court, it's not

3     stayed; it's not part of the injunction, and if and when

4     you want it to be part of the injunction, you'll seek that

5     relief?

6          MR. SACKS: That would be fine, Your Honor.

7          THE COURT: Okay.  That's what I'll do.

8          MR. SINGER: That would be acceptable, Your Honor.

9     Like I said, I wanted clarification because there is a

10    briefing schedule set and a brief due later this month.

11         THE COURT: I have to tell you that when you

12    brought that up to me, it was the first time that that

13    issue crystallized in my mind as a possible issue in

14    writing this decision of so many pages.  So I think this is

15    the most efficient and fair way to handle it.

16         MR. SINGER: Okay.  So then just for my

17    clarification, Your Honor, and one of the reasons I'm here

18    today is I'm counsel of record for the Commission in the

19    appellate action.

20         THE COURT: And also it's a beautiful day in

21    California and --

22       (Laughter.)

23         MR. SINGER: It was a lot more beautiful before

24    about 1:00 o'clock, Your Honor.  But be that as it may --

25         THE COURT: It all depends on your perspective.

1    MR. SINGER: That's true, Your Honor, point well

2    taken.  The point I was simply going to say is then to

3    make -- as I understand it then, the Commission is enjoined

4    from going forward with its enforcement action.  The

5    District Court however is not enjoined from, at this point,

6    filing an opposition brief assuming that there will be one,

7    in the Eleventh Circuit.

8         THE COURT: You're not enjoined from doing

9    anything in the Eleventh Circuit.

10        MR. SINGER: Okay.

11        THE COURT: There's nothing that I've done that

12   affects what you do or don't do in the Eleventh Circuit.

13        MR. SINGER: With due respect, Your Honor, I would

14   say if the enforcement action is stayed and the District

15   Court decision is from the enforcement -- let me take that

16   back.

17        If the Commission is enjoined from going forward

18   in the enforcement action and the Eleventh Circuit decision

19   is part of that, I would say we are stayed -- excuse me,

20   enjoined -- but if you take the position we're not, I just

21   want to be able accurately represent that to the Eleventh

22   Circuit.

23        THE COURT: Okay.  But we can clarify that in the

24   order.  There's no order yet, and you're going to sign off

25   on an order.  There's just a decision.  So, Mr. Sacks, it's

1 your position that I don't need to deal with what's going
2 on in the Eleventh Circuit today, and that matter wasn't
3 briefed, and if you want -- if you want an injunction, vis-
4 a-vis whatever is going on in the Eleventh Circuit, you
5 will seek that.
6          MR. SACKS: That's correct, Your Honor.
7          THE COURT: So there it is.
8          MR. SINGER: Thank you, Your Honor.
9          THE COURT: Thank you, sir.  Okay.
10          MR. SACKS: I think you were about to move to
11 Personal Voice.
12          THE COURT: Right.  Before the Court is Debtor's
13 motion for final use of cash collateral.  Pursuant to
14 Debtor's papers filed on October 30, 2007, the Debtor seeks
15 authority from this Court for a further interim use of cash
16 collateral through November 16, 2007 or as soon thereafter
17 as the Court can hold a further hearing on the motion.  The
18 Court is available and can hold a further cash collateral
19 hearing in this case on November 16th at 10:30 a.m.
20          Debtor currently seeks authority -- I don't have
21 three hours by the way, but I can do it on November 16th --
22 Debtor currently seeks authority to use cash collateral on
23 an interim basis pursuant to Debtor's proposed budget for
24 the next three weeks and pay its 97 percent owned
25 subsidiary over 540,000 during that time in exchange for

1  Debtor's stipulated use of that creditor's cash collateral.

2  Three creditors initially filed objections to Debtor's

3  motion.

4          For the record, the Court is taking a drink of

5  water.

6      (Laughter.)

7          MR. SINGER: Your Honor, I'm terribly sorry.  I

8  missed the time for the November 16th hearing.

9          THE COURT: 10:30.

10          MR. SINGER: Thank you, Your Honor.

11          THE COURT: The parties do not dispute the legal

12  standard, that is, pursuant to Bankruptcy Code Section

13  363(c)(2), Debtor may use cash collateral with the consent

14  of an entity that has an interest in that cash collateral

15  or upon authorization of the Court after notice and

16  hearing.

17          If the Court authorizes the use of cash

18  collateral under Bankruptcy Code Section 363(e), the Court

19  must condition such use on the providing of adequate

20  protection to any entity requesting and entitled to such

21  protection.  Under Bankruptcy Code Section 361, adequate

22  protection requires that Debtor grant a replacement lien or

23  other such relief such that the use of the cash collateral

24  does not decrease any entity's interest in that cash

25  collateral.

1    The parties dispute whether or not certain
2  entities are even required to be provided adequate
3  protection.  Debtor asserts that the objectors who are not
4  secured creditors are not entitled to adequate protection,
5  and in addition, whether it is in the best interest of
6  creditors of the Debtor's bankruptcy case to permit the
7  interim use of cash collateral under the current cash
8  collateral stipulation with PaymentOne.

9    We've covered the FTC and the Receiver's initial
10 objections.  They've been withdrawn.  Disputed secured
11 creditor, Personal Voice -- and the security interest is
12 disputed -- objects to Debtor's final use of cash
13 collateral and presumably objects to the use for these two
14 weeks, but I'm not sure whether they do.  Counsel for
15 Personal Voice?

16    MR. LITTLE: Yes, Your Honor.

17    THE COURT: Do you object to the use of cash
18 collateral for these two weeks?

19   (Pause.)

20    MR. LITTLE: Hello?

21    THE COURT: Yes.

22    MR. LITTLE: Oh, I'm sorry, Judge.  Yes, sir,
23 Judge, we're just renewing our objection we asserted
24 previously in open court --

25    THE COURT: That's fine.

1      MR. LITTLE:  -- concerning, Your Honor, the

2 property of the estate issue, which we're working on an

3 adversary proceeding to file.

4      THE COURT: That's fine.  In addition, Personal

5 Voice objects to Debtor's permanent use of cash collateral

6 to the extent that such request fails to recognize Personal

7 Voice's alleged ownership of Personal Voice's accounts

8 receivable.  Personal Voice asserts that when the accounts

9 receivable were forwarded to Debtor for collection, the

10 proceeds of collection remained the property of Personal

11 Voice and were not transferred to the Debtor.

12      It appears to the Court based on the record

13 before the Court that Personal Voice does not hold a valid

14 security interest in Debtor's assets and that the accounts

15 receivable in which Personal Voice asserts an interest are

16 property of the Debtor's bankruptcy estate.  There is no

17 indication in the service contract between Debtor and

18 Personal Voice that Personal Voice retains an ownership

19 interest in the accounts receivable transferred to Debtor

20 for billing.

21      The fact that Personal Voice filed a UCC-1

22 financing statement and took a security interest in the net

23 proceeds of the receivables the Debtor owed to Personal

24 Voice strongly indicates that Personal Voice did not retain

25 the ownership interest in its transferred accounts as it

1  alleges.

2          With respect to the security interest, it appears

3  that Personal Voice did not file a continuation statement.

4  Any perfected security interest Personal Voice may have had

5  in the net proceeds lapsed in May 2007.  Further Personal

6  Voice only really asserts a security interest in the net

7  proceeds owed to it and Debtor argues that there is no

8  security interest in such net proceeds.  Under Bankruptcy

9  Code Section 363(p) Personal Voice has the burden of proof

10 on the issue of the validity, priority, and extent of its

11 security interest in Debtor's property.  Based on the

12 record before the Court, Personal Voice has not met that

13 burden.

14          In any event, Debtor proposes to grant Personal

15 Voice a replacement lien in the same assets, if any, that

16 Personal Voice had an interest in pre-petition as adequate

17 protection for any alleged security interest.  The Court

18 finds that the granting of the lien adequately protects

19 Personal Voice for Debtor's ongoing use of cash collateral,

20 and the Court overrules Personal Voice's objection.

21 Debtor's proposed budget shows sufficient cash flow to

22 adequately protect Personal Voice for the next two weeks.

23          For all of the above reasons that Personal Voice

24 is adequately protected and because the Creditors'

25 Committee consents to a further interim use of cash

1  collateral, and the Court finds that there is a likelihood

2  of Debtor successfully reorganizing, as the Court has

3  stated in detail in the Court's recent decision with

4  respect to the injunctions, the Court finds that the

5  Debtor's continued use of cash collateral is in the best

6  interest of creditors and Debtor's bankruptcy estate.

7  Debtor's request for further interim use of cash collateral

8  pursuant to the current stipulation with PaymentOne is

9  granted.

10         Now, turning to what I think is k) through m) --

11         MS. DIEMER: Your Honor?

12         THE COURT: Yes.

13         MS. DIEMER: May I address the Court.  POL does

14  not have any objection to the interim use of cash

15  collateral they have over time and believes that it's

16  adequately protected.  However, it was not given the

17  opportunity to sign off on the stipulation, which it would

18  gladly have signed because it believes it's getting a

19  replacement lien and adequate protection, but because I was

20  not asked to do so because I am an unobjected-to secured

21  creditor, which the Debtor has agreed is appropriate, I

22  wanted to put on the record that we do not object.  We

23  continue our position for these two weeks.

24         THE COURT: Thank you.  All right.  So now we have

25  k) through m), which is the motion for order supplementing

1  the order authorizing use of existing cash management

2  system, et cetera, et cetera.  And I have to ask a

3  question.  First, the Debtor isn't requesting authority to

4  use the funds in the blocked account in this motion, so the

5  Receiver's opposition doesn't address the merits of the

6  motion.  But with respect to the motion on the merits, it

7  seems to the Court that there is no need for Court

8  authority to permit a Debtor to open up post-petition bank

9  accounts.  To the extent any court order is required, it

10  could be to amend a prior order permitting the use of the

11  pre-petition bank account post-petition to incorporate the

12  newly-created post-petition accounts, if that's really

13  necessary.

14          But other than that, the Court sees no need for

15  Court authority to open post-petition bank accounts or

16  debtor-in-possession bank accounts.  The Debtor has

17  submitted a proposed order, which is Exhibit E to its

18  papers, and my preliminary view is that paragraphs 4 to 6

19  of the proposed order should be stricken simply because

20  they're unnecessary.  If the U.S. Trustee has some view on

21  that or somebody else wants to be heard, we can do that at

22  the end of the hearing, but I really don't see any reason

23  for me to tell you that you can open up a post-petition

24  bank account.

25          MR. SACKS: The main reason for making this

1   motion, Your Honor, was that the Debtor's bank requested to
2   be presented with an order authorizing the opening of a new
3   bank account.  We looked at the existing order and it
4   permitted us to use our existing accounts.  It didn't say
5   anything about new bank accounts.

6          THE COURT: So it's a comfort order for the bank?
7          MR. SACKS: That's correct.
8          THE COURT: Fine.  Well, if Mr. Wesolowski signs
9   off on the order, I'll sign it.  That's fine.
10         MR. SACKS: Thank you, Your Honor.
11         THE COURT: All right.  Okay, now with respect to
12  l) through o), which is the motion for order authorizing
13  the Debtor and the Debtor-in-Possession to pay pre-petition
14  wages and salaries and pre-petition employee benefits, et
15  cetera, et cetera, does anybody wish to say anything that's
16  not in the papers.
17         MR. FIERO: The Committee will submit on the
18  papers, Your Honor.
19         MR. SACKS: As will the Debtor, Your Honor.
20         THE COURT: Okay.
21         MR. WESOLOWSKI: As will the U.S. Trustee, Your
22  Honor.
23         THE COURT: I can't hear you, Mr. Wesolowski.
24  You're not at a mike.
25         MR. WESOLOWSKI: As will the U.S. Trustee, Your

 1  Honor.

 2          THE COURT: Thank you, sir.

 3          MS. DIEMER: As does POL, Your Honor.

 4          THE COURT: Before the Court is Debtor's request

 5  for authority to pay certain pre-petition wages, employee

 6  benefits, and employee reimbursement claims.  Receiver, the

 7  Creditors' Committee and the United States Trustee oppose

 8  Debtor's request.  Receiver opposes Debtor's request to the

 9  extent -- did you say you agree too?  I don't remember,

10  that I was going to do this without argument?

11          MR. OETZELL: That's fine, Your Honor.

12          THE COURT: Okay.

13          MR. SINGER: We have no objection, Your Honor.

14          THE COURT: Okay.  The Receiver opposes Debtor's

15  request to the extent the Debtor would pay the claims from

16  funds held in the blocked account.  There is no indication

17  in Debtor's motion that the Debtor would pay the claims

18  from those funds.  So the Receiver's objection is either

19  moot or overruled.  It's overruled if the Receiver is

20  making it, even though the funds aren't coming from the

21  blocked account.  But I assume you're not; is that correct?

22  You're not objecting if the funds don't come from the

23  blocked account.

24          MR. OETZELL: Not if the funds don't come from the

25  blocked account, Your Honor.

1       THE COURT: That's fine.  Okay.  The objections of

2   the Creditors' Committee and the United States Trustee

3   raise more substantive issues.  The Debtor concedes that

4   payment of the pre-petition worker's compensation benefits

5   on a priority basis is contrary to Howard Delivery versus

6   Zurich American Insurance, United States 126, Supreme Court

7   2105 (2006) and withdrew that part of the motion.  Debtor

8   however asserts that this Court can authorize the payment

9   of employee benefits above the statutory cap which is now

10  $10,950 per employee under Bankruptcy Code Sections

11  507(a)(4) and (5).  Debtor makes this argument under the

12  Court's Bankruptcy Code Section 105 powers and argues that

13  such authorization is necessary for Debtor to retain its

14  employees.

15      In re B & W Enterprises, Inc., 713 F2d, 534, 9th

16  Circuit (1983), holds that creditors within a class cannot

17  be subordinated to other creditors in that class and that

18  the Bankruptcy Code's priorities cannot be disrupted.  Here

19  there is no basis for preferring certain unsecured

20  creditors, employees with pre-petition reimbursement

21  claims, over other unsecured creditors.

22      The Court is sympathetic to the fact that the

23  employee reimbursement expenses are essentially de minimis

24  aggregating under $700.  However, those employee

25  reimbursements are not entitled to any priority and to

1  permit payment of those claims before a Plan of

2  Reorganization would be contrary to the Ninth Circuit

3  authority of B & W Enterprises.

4          Now frankly, if everybody had stipulated that

5  those $700 could be paid, you know, I might have another

6  view.  Likewise, under B & W Enterprises, pre-petition wage

7  claims can be paid now so long as those claims are priority

8  wage claims and so long as Debtor can make an offer of

9  proof that priority category senior to wage claims, that is

10  secured and administrative claims, can be paid in full

11  despite disbursements to wage claimants now, and none of

12  these wage claimant payments would exceed $10,950 per

13  employee.

14          Moreover, employees are entitled to priority

15  vacation benefits only for vacation accrued prior to 180

16  days before the Debtor filed its bankruptcy petition, which

17  in this case is Tuesday, March 20, 2007.  If Debtor can

18  make the offer of proof that priority category senior to

19  wage claims, that is secured and administrative claims, can

20  be paid in full, despite disbursements to wage claimants

21  now, then Debtor could be authorized to pay pre-petition

22  wage claims and commissions and other employee benefits up

23  to the statutory cap.  Debtor's request to pay pre-petition

24  employee reimbursement claims now is denied.

25          So there you have it.  So you have to make an

1  offer of proof that priority category senior to the wage

2  claims, that is secured and administrative claims, can be

3  paid in full despite disbursement to wage claimants now,

4  and if you do that, you can pay the pre-petition wage

5  claims and commissions and other employee benefits up to

6  the statutory priority cap.

7          MR. SACKS: Your Honor, we'd certainly make an

8  offer of proof as to the administrative claims because the

9  estate is administratively solvent and these employee

10  claims are in a relatively small amount and would not

11  interfere with the estate's ability to satisfy

12  administrative claims.

13          With respect to secured claims, I would suggest

14  that the estate's two admitted secured creditors who are

15  here in court have not submitted an opposition to this

16  motion, and therefore could be deemed to have consented to

17  it without us offering an offer of proof as to exactly how

18  much is in the estate versus these secured claims.

19          THE COURT: So secured creditors speak now or

20  forever hold your peace with respect to this.

21          MR. WARREN: We have not opposed the motion, Your

22  Honor on behalf of PaymentOne.

23          MS. DIEMER: We do not oppose the pre-petition

24  payment of these pre-petition claims, Your Honor.  We think

25  it's important to the reorganization effort.

1          THE COURT: On behalf of?

2          MS. DIEMER: POL.

3          THE COURT: Thank you.  The motion is granted to

4   the extent that I've articulated.

5          With respect to the motion to approve the

6   stipulation -- did you want to say something, sir?

7          (No response on the record.)

8          With respect to the motion to approve the

9   stipulation with Verizon, the notice is proper pursuant to

10  the Court's order shortening time and the stipulation

11  appears to be in the best interest of creditors in the

12  estate.  It's not clear the extent to which, if at all,

13  A & C Properties applies to this, but the Court has

14  reviewed the factors in A & C Properties, 784 F2d, 1377, 9th

15  Circuit (1986) and finds that the transaction meets

16  those -- all of those standards and approves the

17  compromise.

18         Now that takes care of everything on calendar.  I

19  had a couple of questions.  Mr. Fiero, I haven't gotten an

20  application from you.

21         MR. FIERO: Your Honor, it was filed this morning.

22         THE COURT: Thank you.  And has the U.S. Trustee

23  signed off on it?

24         MR. FIERO: No, I discussed it with the United

25  States Trustee yesterday, and I expect to be hearing from

1  him shortly.

2          THE COURT: Okay.

3          MR. WESOLOWSKI: I haven't seen it yet.

4          THE COURT: Can you please go to a mike whenever

5  you want to speak?  I'm just concerned --

6          MR. WESOLOWSKI: I haven't seen it yet, Your

7  Honor.

8          THE COURT: Okay.  That's fine.  So I'll lodge it

9  to give the U.S. Trustee the normal amount of time which

10  would be seven days to respond.  Unless you can let us know

11  earlier than that that you have no opposition and then I

12  don't need to lodge it anymore.

13          MR. OETZELL: Your Honor, if I might --

14          THE COURT: Just one second.  I want to make sure

15  of something.  You're concerned about Mr. Fiero and the

16  Committee?

17          Oh, okay.  Go ahead.

18          MR. OETZELL: Mr. Fiero brought this up on the 17th

19  that we may have a problem with him, and the answer is that

20  we do, and we want nothing that we have done or not done

21  last time or this time to be argued as a waiver of the

22  problem.  We have no problem with Mr. Fiero representing

23  the Committee.  We do have a problem with Mr. Fiero taking

24  a position adverse to the Receiver, and this is because we

25  believe that the Receiver's attorney, Mr. Schneider, spoke

1  to Mr. Fiero about representation prior to the hearings

2  herein, and disclosed sufficient information to conflict

3  out Mr. Fiero in this.  Last --

4          THE COURT: Well, the Committee can't not take a

5  position on you because it's critical to the reorganization

6  what happens with you, so I guess that puts Mr. Fiero in a

7  very awkward spot, unless somebody else from his firm could

8  make those arguments.  But I don't know exactly whether

9  you're trying to preclude the whole firm.  If you're trying

10  to preclude the whole firm, we've got a problem.  Do you

11  agree that somebody else from his firm could make whatever

12  arguments the Committee deems appropriate to make?

13          MR. OETZELL: The answer is, Your Honor, it is my

14  understanding that probably technically a wall could be set

15  up, but they don't seem to work very well, and I don't

16  know -- I guess what I'm saying is that I don't have

17  sufficient information about what Mr. Fiero has told or not

18  told other attorneys in the firm that I can make that

19  assessment at the moment.

20          THE COURT: All right.  So do I anticipate from

21  you within the seven days an opposition?

22          MR. OETZELL: At least as it respects to the

23  limited issue of him taking a position against the

24  Receiver's position, and I understand Your Honor's concern

25  that --

1          THE COURT: Right.  It's an enormous issue in the

2     case.  You know, the proof of that is the length of the

3     Court's decision on injunction.  It's an important issue.

4     Okay --

5          MR. FIERO: Your Honor, we made a copious

6     disclosure in our pleadings filed today, after extensive

7     efforts to communicate with the Receiver and internal

8     communications.  There's pages of it, and you'll have an

9     opportunity to read it.  We're confident that no

10    confidential information was ever shared with any attorney

11    in my firm, nor is there any basis to exclude us from

12    participation in this case.

13          THE COURT: In any respect.

14          MR. FIERO: In any respect.

15          THE COURT: Okay.

16          MR. OETZELL: We haven't seen it, but we will be

17    happy to look at it and comment on it.

18          THE COURT: Okay.  But understand the normal way

19    of dealing with it, which I hope you will honor, is that if

20    I don't get an opposition within seven days, I'm free to

21    sign it.  And if I do, it will probably be set for hearing.

22          MR. OETZELL: Very good, Your Honor.

23          THE COURT: Thank you.  Okay.  Is there -- you had

24    wanted to talk to me, but I'm not sure whether we covered

25    it in the context of the Eleventh Circuit discussion.

1            MR. SINGER: You did not, Your Honor, and it will

2 be briefed, I think, but -- I'll get to my point -- it

3 probably comes as no surprise to Your Honor or anyone else

4 that the Commission will be appealing the preliminary

5 injunction order. I would ask in the first instance out of

6 an abundance of caution, if you would certify the

7 preliminary injunction for appeal. I don't think that's

8 necessary, but better safe than sorry, Your Honor.

9            THE COURT: Are you prepared to address

10 certification of this at the moment or do you want it in

11 writing and we'll have to look at it?

12            MR. SACKS: I would think it would be better off

13 in writing. I haven't addressed the matter.

14            THE COURT: He hasn't thought about it.

15            MR. SINGER: I don't think it's necessary, but as

16 I said, I thought I would ask. The other thing which I am

17 also going to ask for, and if you'd like it in writing, we

18 can do that, but I don't know if it's necessary, is the

19 Commission would ask for a stay pending appeal of the

20 preliminary injunction to the District Court. I would

21 anticipate if you issue a stay today that we would be able

22 to file something by next Tuesday at the latest. I'm going

23 to be tied up in travel across the country all day

24 tomorrow, so there's a limit to how much work I can do.

25            THE COURT: So you would like me to stay the

1 effect of the order for say through Wednesday or so?

2          MR. SINGER: Well, actually, what I prefer would

3 be if you could stay it through the District Court making a

4 decision, I would --

5          THE COURT: That's up to the District Court.

6          MR. SINGER: Okay.  What I would ask then if you

7 could stay it even through Wednesday, that would be

8 preferable because at least it gives me a chance to file

9 something and --

10          THE COURT: Well, but here's the problem.

11          MR. SINGER: Sir?

12          THE COURT: Here's the problem.  Their time to do

13 anything in the enforcement action has to stop now by

14 agreement.  I don't mind staying the order so that you have

15 time to appeal, but you have to agree that they don't have

16 to do -- any time that they would have to do anything would

17 be stayed for the period of time that you want.  Otherwise,

18 it's self defeating.

19          MR. SINGER: Your Honor, as I understand -- I

20 appreciate your concern entirely, Your Honor, but as I

21 understand it, and I spoke with the counsel who's actually

22 handling the enforcement action before we came in here,

23 discovery -- it's now 5:30 on the East Coast -- discovery

24 has closed.  One of the two outstanding discovery motions,

25 one was denied, the one concerning the designee deposition

1  of the Federal Trade Commission.  There is another motion

2  pending by BSG to open discovery --

3            THE COURT: Discovery for ten depositions.

4            MR. SINGER: Yes.  However that was -- let me

5  explain that.  On Monday afternoon --

6            THE COURT: So you're telling me more details than

7  I probably need.  I'll explain to you what --

8            MR. SINGER: No, Your Honor --

9            THE COURT: Let me speak first and then I'll

10  explain.

11            MR. SINGER: Certainly.

12            THE COURT: What would stop you from doing

13  something in the enforcement action between now and

14  Wednesday if I were to stay my order?  The key is to make

15  sure that everything stands still if you want that stay

16  through Wednesday, and if you guarantee that everything on

17  your side will stand still through Wednesday, then

18  convincing me that nothing is likely to happen isn't

19  necessary.

20            MR. SINGER: Your Honor, the only thing that the

21  Commission would be doing between now and Wednesday because

22  discovery did close today would be filing a summary

23  judgment motion on Monday.

24            MR. BERG.  Your Honor, this is Andrew Berg,

25  counsel for BSG.  In fact the second motion that counsel

1  referred to was granted by Judge Riscamp (Phonetic) this

2  morning.

3           MR. SINGER: Okay.  I was not aware of that.

4           MR. BERG: Discovery will proceed through the 16th

5  of November.

6           THE COURT: Okay.  So it's not -- it is going on.

7           MR. SINGER: I was not aware of that, Your Honor,

8  but I apologize, since I've been here in the West Coast and

9  haven't access to the docket.

10          THE COURT: Thank you for the clarification, sir.

11          MR. SINGER: Thank you.

12          THE COURT: So do you withdraw your request for a

13  stay?

14          MR. SINGER: I would still ask for a stay pending

15  appeal, Your Honor.  If you'd like to deny it, that's

16  certainly your prerogative.

17          THE COURT: I'm willing to give it to you if you

18  agree that everything stands still, vis-a-vis the Debtor,

19  that any deadline, anything, is going to stand still as

20  long as the stay.  I will grant you the stay.

21          MR. SINGER: Your Honor, may I take a couple

22  minutes to consult with the counsel who's actively handling

23  the enforcement action?

24          THE COURT: Absolutely.  I can recess for a few

25  minutes if you want, but not right this second.

1          MR. SINGER: Certainly.

2          THE COURT: Is there anything else that we

3  usefully need to cover today?

4          MR. FIERO: Your Honor, just by way of status

5  report, as you know, the Committee only agreed to a two-

6  week extension for the use of cash collateral.  One of the

7  reasons was that there was not yet a term sheet or a buyer

8  for the Debtor's assets.  I'm pleased to say that in the

9  last 48 hours, the Debtor has worked very hard with a

10  purchaser to come up with a form of term sheet, and within

11  the next two weeks and perhaps within the next week, you

12  will see a motion to in essence auction the right to be the

13  Debtor's equity sponsor under a Plan.  And this case might

14  very well wrap up within 90 days.

15          THE COURT: Very good.  So whatever -- if there's

16  going to be an appeal of my injunction, it would seem to me

17  that that would be very important information for the

18  Appellate Court.

19          Go ahead.

20          MR. SACKS: Your Honor, I was just going to say

21  with respect to the request for a stay, as the Court is

22  enjoining the FTC and is not enjoining the Court, I think

23  it's important that the injunction be in place even though

24  they're appealing it so that we are not faced with them

25  filing things as to us that we then are in an uncertain

1  state as to what we have to respond to.

2        THE COURT: But if he agrees that everything is

3  stayed with respect to you, voluntarily through Wednesday,

4  then my staying the effect of my decision can't harm you.

5  If he won't then you just articulated in a different way my

6  concern, vis-a-vis the FTC. Now I have no question that

7  the FTC is going to act honorably, but they have to tie

8  their own hands voluntarily or be tied if they want a stay

9  of my order enjoining the proceeding of the enforcement

10  action. If they'll do it voluntarily, then I don't have

11  any problem trusting them and enjoining -- and delaying the

12  effectiveness, if you will, or staying the effectiveness of

13  my injunction for a few days. I think they're really

14  entitled to that. The only reason I wouldn't do it is if

15  they're going to start -- if there's a chance they're going

16  to file stuff and you're going to have to respond to it.

17  That'S exactly what I told counsel.

18        MR. SACKS: Well --

19        MR. BERG: Your Honor, again this is Andrew Berg,

20  counsel for BSG, and in fact, the Federal Trade Commission

21  intends to file a motion for summary judgment against both

22  BSG and Integretel. The deadline for that under the

23  Florida Court's scheduling order is Tuesday, the 6th of

24  November.

25        THE COURT: Now is that still the case even though

1  the discovery has been reopened for ten more depositions?

2       MR. BERG: That's correct.  The emergency order

3  that was granted today went to only the extension of the

4  cutoff date with regard to the conduct of discovery.  It

5  had no bearing, expressly and at the request of the FTC,

6  and had no bearing on the scheduling order.  Our

7  understanding is the FTC intends to file their motion for

8  summary judgment on Tuesday the 6th of November.

9       MR. SINGER: My understanding, Your Honor, is it's

10 not atypical in the Southern District of Florida for

11 discovery to be ongoing even though summary judgment

12 motions are filed.

13      THE COURT: All right.  But I don't want you to

14 file a summary judgment motion and start the Debtor's time

15 to do something while you're in essence asking me to stay

16 my order enjoining the enforcement proceeding.  So it seems

17 inconsistent.  If you're going to file a motion for summary

18 judgment and their time is going to run, then you're taking

19 advantage of the stay that you're asking me for.

20      MR. SINGER: Well, let me ask this, Your Honor.

21 If we were to voluntarily agree to a stay and let's say I

22 filed something on Monday or Tuesday, as I understand it --

23      THE COURT: You can't file anything on Monday or

24 Tuesday if you voluntarily agree to a stay.

25      MR. SINGER: Let me rephrase that.  I think I was

1  unclear.  Let's assume for the same of argument, Your

2  Honor, that we would agree to a stay.  I have to talk, as I

3  said, with my colleagues to do that.

4         THE COURT: I understand.

5         MR. SINGER: And we file -- the something I was

6  going to say was the something we would file would be a

7  stay motion with the Northern District of California along

8  with our appeal.  Would Your Honor be willing to have your

9  stay, stay in effect until it's briefed in the Northern

10 District of California?

11        THE COURT: No.  You get a stay from them based on

12 your likelihood of success.  I give you enough time to get

13 there, and then they decide what to do with you.

14        MR. SINGER: I appreciate that, Your Honor, but

15 the problem I run into under the schedule you've proposed

16 is if I file with the Northern District on Monday, the

17 response from the Debtor isn't due until -- isn't due for

18 seven days, so your --

19        THE COURT: If you voluntarily stay yourself, you

20 will do nothing that will possibly involve Integretel, then

21 you can have a longer time than that.

22        MR. SINGER: Okay.  I will need to talk with my

23 colleagues about that, Your Honor.

24        THE COURT: And that's subject to talking to Mr.

25 Sacks and the other lawyers to see if there's a problem

1   with what I'm suggesting, but off the top of my head, it

2   seems to me that if you voluntarily stay yourself to the

3   full effect of my injunction, you know, you're blocked to

4   that full extent voluntarily, then I have no reason to have

5   my order go into effect or I can stay the effect of my

6   order during that time.

7          MR. SINGER: I understand, Your Honor.  I have to

8   talk with my colleagues.  Thank you.

9          THE COURT: Okay.  And it's subject to my changing

10  my mind if they convince me otherwise because I am reacting

11  to you without hearing from them.

12         MR. SINGER: Fair enough.

13         THE COURT: Okay.  So would you like me to take a

14  15-minute break or --

15         MR. SINGER: That would be fine, Your Honor.

16  Thank you.

17         THE COURT: Okay.  Does anybody have -- do we have

18  any further business?  I have another matter right now that

19  I want to take up at 2:30, so I'm going to go to my other

20  matter in the court, and you can use conference rooms if

21  you need to or sit here.  Do whatever you want.  Thank you.

22         MR. SINGER: May we be excused, those of us who

23  want to participate in that --

24         THE COURT: Anybody is excused, on the phone or in

25  court, whenever they want to be.

1  MR. SACKS: Your Honor, the only thing I was going

2  to add is that we do have forms of orders for the cash

3  collateral and for the other matters.  The two most

4  important ones are probably the cash collateral and the

5  Verizon stipulation.

6  THE COURT: I'll sign them as soon as you get them

7  up to me with everybody's signatures.

8  MR. SACKS: Thank you, Your Honor.

9  MR. SINGER: May I step outside, Your Honor.

10  THE COURT: Yes, sir.

11  MR. SINGER: Thank you.

12  MR. SACKS: If you have a matter at 2:30, we can

13  deal with the orders afterwards.  I just didn't want to

14  leave --

15  THE COURT: But I want to get them into the

16  Clerk's Office as fast as I can because you want them

17  today, and I want to get them to you today and there's some

18  staffing issues so -- you should -- as soon as you get them

19  signed, you know, it could be ten minutes from now, this

20  hearing isn't going to take a lot of time.

21  MR. SACKS: Okay.

22  THE COURT: Go off the record, please.

23  (Whereupon, extraneous matters are heard at 2:34 p.m.

24  and this matter is recalled at 3:20 p.m.)

25  THE COURT: Please remain seated.  Thank you.

1    Okay. So I need to call this case again. This

2 is Billing Resources. May I have appearances of counsel.

3    MR. SACKS: Steven Sacks, Sheppard Mullin, for the

4 Debtor.

5    MR. OETZELL: Walter Oetzell of Danning, Gill,

6 Diamond & Kollitz on behalf of the Federal Receiver.

7    MR. SINGER: John Andrew Singer for the Federal

8 Trade Commission.

9    MR. WESOLOWSKI: John Wesolowki for the U.S.

10 Trustee.

11    MS. DIEMER: Kathryn Diemer on behalf of creditor,

12 POL.

13    MR. FIERO: John Fiero for the Committee, Your

14 Honor.

15    THE COURT: Andrew Berg?

16    MR. BERG: Yes, I'm here, Your Honor.

17    THE COURT: Jeff Garfinkle?

18    MR. GARFINKLE: Yes, I'm here, Your Honor.

19    THE COURT: Candace Carlyon? (No response.)

20    Thomas Little.

21    MR. LITTLE: Yes, Your Honor.

22    THE COURT: Enid Colson? (No response.)

23    Leslie Horowitz? (No response.)

24    Jeff Schneider?

25    MR. SCHNEIDER: Yes, Your Honor.

1                THE COURT: Michael Mora?

2                MR. MORA: Yes, Your Honor.

3                THE COURT: Darryl Laddin?  (No response.)

4                Timothy Miller?  (No response.)

5                Okay.  (Speaking to Mr. Sacks.)  No, I told you

6      not to fill this in.

7                MR. SACKS: I'm sorry, Your Honor.  I

8      misunderstood.

9                THE COURT: All right.  So your papers will go out

10     Monday and objection by the 12th for a hearing --

11               MR. SACKS: I have a clean one, Your Honor, if you

12     wish.

13               THE COURT: I don't understand.  Yeah, this is

14     okay.  These dates are all right.  Okay.

15               UNKNOWN SPEAKER ON THE PHONE: Your Honor, I'm

16     sorry.  We're having difficulty hearing you on the

17     telephone.

18               THE COURT: That's because I'm not saying

19     anything.  I'm just reading an order which sets up the

20     briefing on the cash collateral, and I've done that.  So

21     this will go out Monday.

22               UNKNOWN SPEAKER: Thank you, Your Honor.

23               THE COURT: Okay.  Now we were going to talk about

24     a stay.

25               MR. SINGER: Yes, Your Honor.  I've consulted with

1  my colleagues who are handling the enforcement action, and

2  the Commission is not in a position to voluntarily agree to

3  stay the action, so we would make our motion for a stay

4  pending appeal.  I think I know what your order is going to

5  be, but I do want to give you our position.

6            THE COURT: Do you want to respond, Mr. Sacks?

7            MR. SACKS: Your Honor, the purpose of the order

8  would be thwarted if the Court stays it pending appeal.

9            THE COURT: I agree.  The request is denied based

10  on the fact that there's no voluntary agreement in

11  substantial part.  It seems to me that in essence the

12  Debtor could be required to do anything during this period,

13  and I don't know how long the District Court is going to

14  take.  If you're going to go to the District Court rather

15  than the BAP, I don't know how long the District Court or

16  the BAP is going to take in prosecuting your appeal, but

17  the key is that the purpose -- the whole purpose of the

18  order would be thwarted.  The injunction would be thwarted

19  if I didn't deny the stay under this circumstance.

20            MR. SINGER: I understand that, Your Honor, and I

21  would state solely for the record that the Commission feels

22  it would be irreparably harmed because discovery is taking

23  place, summary judgment is going forward, and we feel it

24  would be a waste of resources for the Commission to have to

25  go forward in this action without Integretel.  I have to

1  perhaps duplicate --

2          THE COURT: But that was an argument for the

3  injunction in the first place, not having anything to do

4  with the stay.

5          MR. SINGER: They actually somewhat overlap

6  because the standard for a stay pending appeal is

7  essentially the P.I. standard, so I won't -- I'm not making

8  the whole argument again, but I'm just -- I'm stating that

9  for the record.

10          THE COURT: Well, I think the Debtor would be

11  irreparably injured if I didn't -- if I did stay it now

12  under the circumstance where you've turned the Court down

13  on that request, and that the balance of hardships favors

14  the Debtor.  And to the extent that the Court believes that

15  the Court's decision has a likelihood of success on appeal,

16  the Court so believes.

17          MR. SINGER: I would respectfully disagree on

18  that.  (Laughter.)

19          THE COURT: I understand.

20          MR. SINGER: The other thing also just for -- and

21  Mr. Sacks can correct me if I'm wrong -- he will be

22  circulating hopefully on Sunday so we'll have something on

23  Monday or Tuesday at the latest, an actual order to go with

24  your opinion.

25          THE COURT: That's fine.  When are you going to

1  get that to me?  It should be this afternoon, Mr. Sacks.

2  You should go back to your office, write this up.  The

3  Federal Trade Commission -- are you going home tonight or

4  are you staying?

5       MR. SINGER: I'm going home tomorrow morning, Your

6  Honor, but he's going to circulate it on Sunday so I

7  believe that we'll have something for you on Monday.

8       THE COURT: Okay.

9       MR. SACKS: Certainly no later than that.  The

10  only -- I can't circulate something to you until I show it

11  to opposing counsel, so --

12       THE COURT: Absolutely.

13       MR. SINGER: And Your Honor, I appreciate that

14  theoretically there could be -- there might not be an order

15  entered until Tuesday, but we understand the spirit of your

16  opinion is that we shouldn't file a summary judgment, and

17  we will not, harped by a technicality.

18       THE COURT: Thank you, sir.  So you will honor the

19  order having been issued from the bench until -- pending

20  the --

21       MR. SINGER: We're taking this as an order, an

22  oral order from the Court, and a formal written order will

23  be following, but your opinion makes your position quite

24  clear.

25       THE COURT: Thank you, sir.  Okay.  So I'm

1  prepared to say have a great weekend, if you all are

2  finished and you have no further business before the Court

3  at this time.

4         MR. SACKS: Mr. Wesolowski pointed out that today

5  is also our status conference date.

6         THE COURT: Oh yes, so we need a new date.  When

7  do you want to come back?  What do you think?  You have my

8  calendar so you can -- or you don't have my calendar.  Do

9  you know the status conference dates?

10         MR. SACKS: I don't, Your Honor.

11         THE COURT: You should, coming to court, Mr.

12  Sacks.  Give me a month.  What month do you want to come

13  back?

14         MR. SACKS: I would think we'd come back in --

15         THE COURT: January?

16         MR. SACKS: In mid December or --

17         THE COURT: Mid December is fine.  My Disclosure

18  Statement/Confirmation calendar is December 7th or the other

19  date is January 4.  You can have both -- either.

20         MR. SACKS: I would think that we'd go with

21  January 4.

22         THE COURT: Is that okay with you, Mr. Wesolowski?

23         MR. WESOLOWSKI: That's fine, Your Honor.

24         THE COURT: Okay.  Is that okay with the

25  Committee?

1          MR. FIERO: Yes, Your Honor.

2          THE COURT: That's fine.  Anybody else have any

3     other views?  Does that --

4          MR. GARFINKLE: Yes, Your Honor, this is Jeff

5     Garfinkle on behalf of United OnLine.  In light of the --

6     what we're hearing, both my clients hearing what was

7     represented in court of a potential limited transaction,

8     that we should take that into account in terms of whatever

9     dates are being set for some sort of transaction.

10          THE COURT: Well, they can file a motion with

11     respect to the transaction or do whatever they want to as

12     soon as they want to.  If it's going to be in a Plan,

13     that's different, but if they're going to file a motion,

14     they're going to file a motion.

15          MR. GARFINKLE: Understood.

16          THE COURT: But I'm just talking about the status

17     conference in the Chapter 11, moving that to January 4.

18     I'm not setting that as a date for hearing of motions.

19          MR. GARFINKLE: That's fine, Your Honor.

20          THE COURT: Thank you.

21          MS. DIEMER: What time, Your Honor?

22          THE COURT: I said January 4; I'm wrong.  It's

23     January 11th at 2:00 o'clock.  Did I give the December date

24     wrong too?  No.  January 11th, at 2:00 o'clock.

25          MS. DIEMER: Thank you, Your Honor.

1          THE COURT: Thank you.  Thank you very much,

2     ladies and gentlemen.  Have a great weekend.

3          ALL COUNSEL: Thank you, Your Honor.

4          THE COURT: This is a very interesting case, and

5     it's a pleasure working on it because there are good

6     lawyers.  So thank you very much.

7          ALL COUNSEL: Thank you, Your Honor.

8          THE COURT: Court is adjourned.

9      (Whereupon, the proceedings are concluded at 3:28

10    p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                       CERTIFICATE OF TRANSCRIBER

5

6            I certify that the foregoing is a correct

7    transcript from the digital sound recording of the

8    proceedings in the above-entitled matter.

9

10   DATED: November 13, 2007

11

12                        By:___/s/ Jo McCall_____

13

14

15

16

17

18

19

20

21

22

23

24

25