1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                (SAN JOSE DIVISION)

4

5   In re:

6   THE BILLING RESOURCE,            Case No. 07-52890-ASW

7                                    Chapter 11

8                                    San Jose, California
                                     December 7, 2007
9                                    11:09 a.m.

            Debtor.
10  _____/

11  THE BILLING RESOURCE, dba
    INTEGRETEL, a California
12  corporation,

13          Plaintiff,

14      v.                           A.P. No. 07-5156

15  DAVID R. CHASE, et al.,

16          Defendants.
    _____/

17

18              TRANSCRIPT OF PROCEEDINGS
            a) MOTION FOR ORDER TO SHOW CAUSE REGARDING
19       PRELIMINARY INJUNCTION AND DECLARATORY RELIEF
         b) OPPOSITION BY DEFENDANT, FEDERAL TRADE COMMISSION
20      c) OPPOSITION BY DAVID R. CHASE, FEDERAL RECEIVER
              OF ACCESS ONE COMMUNICATIONS, INC. AND
21                  NETWORK ONE SERVICES, INC.
            d) MOTION TO DISMISS COMPLAINT PURSUANT TO
22   FRCP RULE 12(b)(1) BY DEFENDANT, DAVID CHASE, AS RECEIVER
                  e) OPPOSITION BY PLAINTIFF
23      f) MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT
                        BY PLAINTIFF
24      g) OPPOSITION BY DAVID R. CHASE, FEDERAL RECEIVER OF
          ACCESS ONE COMMUNICATIONS, INC. AND NETWORK
25                  ONE SERVICES, INC.

<pre>
1                    TRANSCRIPT OF PROCEEDINGS
                       RE A.P. NO. 07-5156
2            a) MOTION TO UNBLOCK BLOCKED ACCOUNT BY DEBTOR
                            (OFF CALENDAR)
3        b) MOTION FOR ORDER APPROVING INTERIM COMPENSATION AND
              REIMBURSEMENT PROCEDURES FOR PROFESSIONALS BY
4                         ATTORNEY FOR DEBTOR
          c) LIMITED OPPOSITION AND RESERVATION OF RIGHTS AND
5        PRIVILEGES BY DAVID R. CHASE, FEDERAL RECEIVER OF
                  ACCESS ONE COMMUNICATIONS, INC. AND
6                       NETWORK ONE SERVICES, INC.
        d) MOTION FOR ORDER APPROVING STIPULATION APPOINTING THE
7        COMMITTEE AS ESTATE REPRESENTATIVE IN ADVERSARY
            PROCEEDING INITIATED BY THERMO CREDIT, LLC BY DEBTOR
8

9               BEFORE THE HONORABLE ARTHUR WEISSBRODT
                  UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12

     For the Debtor:          SHEPPARD, MULLIN, RICHTER and
13                            HAMPTON
                              BY:  STEVEN SACKS, ESQ.
14                            Four Embarcadero Center, 17th Floor
                              San Francisco, California 94111
15

16
     For the Federal          DANNING, GILL, DIAMOND &
17   Receiver:                KOLLITZ, LLP
                              BY: WALTER OETZELL, ESQ.
18                            2029 Century Park East, 3rd Floor
                              Los Angeles, California 90067
19                            (APPEARING TELEPHONICALLY)

20

21   For the Committee:       PACHULSKI, STANG, ZIEHL, JONES
                              BY: MAXIM B. LITVAK, ESQ.
22                            150 California Street, 15th Floor
                              San Francisco, California 94111
23

24

25
</pre>

```
 1   APPEARANCES (CONTINUED):

 2

 3
     For the Federal Trade        UNITED STATES FEDERAL TRADE
 4   Commission:                  COMMISSION
                                  OFFICE OF THE GENERAL COUNSEL
 5                                BY: MICHAEL MORA, ESQ.
                                      COLLOT GUERARD, ESQ.
 6                                600 Pennsylvania Avenue, NW
                                  Washington, DC 20580
 7
                                  (APPEARING TELEPHONICALLY)
 8

 9
     For BSG Clearing             KING & SPALDING
10   Solutions:                   BY: FELTON E. PARRISH, ESQ.

11                                (APPEARING TELEPHONICALLY)

12

13   Court Recorder:             CHRISTINA TAFOLLA
                                  UNITED STATES BANKRUPTCY COURT
14                                280 South First Street
                                  San Jose, California 95113
15

16
     Transcription Service:       Jo McCall
17                                Electronic Court
                                  Recording/Transcribing
18                                2868 E. Clifton Court
                                  Gilbert, Arizona 85297
19                                Telephone: (480-361-3790

20

21

22

23

24

25
```

1        P R O C E E D I N G S

2    December 7, 2007                            11:09 a.m.

3                        ---oOo—--

4            THE COURT:  Billing Resource.  May I have

5    appearances of counsel first in the courtroom, and then

6    I'll call the list on the phone.

7            MR. SACKS: Steven Sacks of Sheppard, Mullin, for

8    the Debtor.

9            MR. LITVAK: Good morning, Your Honor, Max Litvak,

10   Pachulski, Stang on behalf of the Creditors' Committee.

11           THE COURT: Good morning.  Mr. Mora?

12           MR. MORA: Good morning, Your Honor, Michael Mora

13   for the Federal Trade Commission.

14           THE COURT: Ms Guerard?

15           MS. GUERARD: Good morning, Your Honor, Collot

16   Guerard for the Federal Trade Commission.

17           THE COURT: Mr. Oetzell?

18           MR. OETZELL: Good morning, Your Honor, Walter

19   Oetzell of Danning, Gill, Diamond and Kollitz on behalf of

20   the Federal Receiver.

21           THE COURT: Mr. Parrish?

22           MR. PARRISH: Yes, good morning, Your Honor,

23   Felton Parrish with King & Spalding on behalf of BSG

24   Clearing Solutions.

25           THE COURT: Is there anybody else on the phone?

1  Very good.

2          Go ahead Mr. Sacks.

3          MR. SACKS: Your Honor, shall we proceed in the

4  order that's on the calendar?

5          THE COURT: Yes, that would be fine.

6          MR. SACKS: Okay.  The first item on the calendar

7  that we have is the motion to dismiss complaint, which is

8  referring to the adversary proceeding, and that's the

9  Receiver's motion.

10          THE COURT: Yes.  So counsel for the Receiver, do

11  you wish to make any arguments especially those that may

12  not be in your pleadings or those that you want to

13  emphasize?

14          MR. OETZELL: No, Your Honor, but I would suggest

15  that if we go ahead and rule on the motion to amend the

16  complaint, the motion to dismiss may well be rendered moot,

17  if the complaint was going to be amended, and obviously if

18  there's no reason to rule on the --

19          THE COURT: Your voice is trailing off, Mr.

20  Oetzell.

21          MR. OETZELL: Oh.  I'm saying that if we decide

22  the motion to amend the complaint, then this motion to

23  dismiss may well be moot if Your Honor grants the

24  permission to amend the complaint, and then obviously this

25  motion is no longer operative and so I would suggest this

1  be trailed until after the ruling on the motion to amend.

2      THE COURT: Okay.  Frankly, I have a decision

3  ready on both motions so if you don't want to say anything

4  and you don't want to say anything, and you don't want to

5  say anything, then I could just decide.

6      MR. OETZELL: That's fine, Your Honor.  We've said

7  it all in our briefs.

8      THE COURT: Thank you.

9      MR. SACKS: Submitted, Your Honor.

10     THE COURT: Before the Court is the Receiver's

11 motion to dismiss the Receiver from this complaint on the

12 basis that Debtor's filing of the complaint against

13 Receiver without the prior permission from the Florida

14 District Court violates the Barton Doctrine.  The Florida

15 District Court will be referred in this decision as the

16 Florida Court.

17     Also before the Court is Debtor's motion for

18 relief to file an amended complaint.  Both the FTC and the

19 Receiver oppose Debtor's motion for leave to file an

20 amended complaint.  This Court hereby incorporates all of

21 the findings of fact and conclusions of law as set forth in

22 this Court's Memorandum of Decision filed and entered on

23 November 2nd, 2007, subsequently referred to as the

24 Memorandum of Decision.

25     The Receiver bases his motion to dismiss on the

1  assertion that the Barton Doctrine precludes this Court

2  from having subject matter jurisdiction over Receiver in

3  this adversary proceeding.  The Court has thoroughly

4  reviewed the discussion of the Barton Doctrine as set forth

5  in this Court's Memorandum of Decision at page 38, line 7

6  through page 49, line 14, as well as the positions of the

7  parties.

8          In the Memorandum of Decision, the Court

9  explained why the Court concluded that determining that the

10 Barton Doctrine is not applicable to this adversary

11 proceeding and why this Court had jurisdiction to determine

12 that the Barton Doctrine is not applicable under the facts

13 of this case.  Nothing in the Receiver's motion alters this

14 Court's analysis as set forth in the Memorandum of

15 Decision.

16         Based on the analysis of the applicability of the

17 Barton Doctrine as set forth in this Court's Memorandum of

18 Decision at page 38, line 7 through page 49, line 14,

19 Receiver's motion to dismiss is denied.

20         Turning to Debtor's motion for leave to file an

21 amended complaint, the Debtor seeks to amend its complaint

22 in essence to add a cause of action for a declaration that

23 Debtor's funds and other property are free from any

24 property interest claimed by Receiver and/or the FTC.  The

25 parties agree that under Federal Rule of Bankruptcy

1  Procedure Rule 7015, leave to amend a complaint should be

2  freely granted unless there is a showing of undue delay,

3  bad faith or dilatory motive on the part of the movant,

4  repeated failure to cure deficiencies by amendments

5  previously allowed, undue prejudice to the opposing party

6  by virtue of allowance of the amendment, or futility of

7  amendment.  See Foman versus Davis (Phonetic) 371, US 178

8  at 182, (1962).

9          The Receiver asserts that permitting Debtor to

10  amend its complaint is an exercise in futility because this

11  Court lacks subject matter jurisdiction over Receiver in

12  this adversary proceeding under the Barton Doctrine.  As

13  stated earlier in this oral decision and based on the

14  analysis of the applicability of the Barton Doctrine as set

15  forth in this Court's Memorandum of Decision at page 38,

16  line 7 through page 49, line 14, the Barton Doctrine does

17  not apply in this adversary proceeding and Receiver's

18  opposition to Debtor's motion for leave to file an amended

19  complaint is overruled on that basis –- is overruled as to

20  that basis.

21          The FTC and Receiver oppose Debtor's motion for

22  leave to amend on the basis that the proposed amendment is

23  futile since the proposed amendment would merely re-litigate

24  the issue of the ownership of the subject funds.  Issue

25  preclusion bars re-litigation if three criteria are met.

1  First, the issue necessarily decided at the previous

2  proceeding is identical to the one sought to be re-

3  litigated.  Second, the first proceeding ended with a final

4  judgment on the merits, and third, the party against whom

5  preclusion is sought was a party to the first proceeding.

6  In re Reynoso (Phonetic) 477 F3d, 1117 and 1122, 9th Circuit

7  (2007).

8          The first criteria for issue preclusion is not met

9  here, that the issue necessarily decided at the previous

10  proceeding is identical to the one sought to be re-

11  litigated.

12          In the omnibus order, the Florida Court addressed

13  whether the Receiver had a property interest in the abstract

14  but did not address to what particular asset that interest

15  attached.  The only asset that the Debtor had at the time to

16  which the interest could possibly attach were commingled

17  funds.  The issue raised by the proposed fourth cause of

18  action in the amended complaint is whether any interest the

19  Receiver had at the time of Debtor's bankruptcy filing

20  attached to specific funds or assets now held by the Debtor

21  such that Receiver holds a property interest in any specific

22  assets of the Debtor.  That issue was not previously

23  litigated or adjudicated -- litigated in or adjudicated by

24  the Florida Court and thus is not part of the appeal before

25  the Eleventh Circuit.  Debtor is not re-litigating the

1 | identical issue previously litigated before the Florida

2 | Court or on appeal to the Eleventh Circuit.

3 | Regarding whether there's any issue preclusion as

4 | to any determination made by the Florida Court in the

5 | clarification order, there was not final adjudication on the

6 | merits of Debtor's interest in the ownership of the subject

7 | funds and what interest Debtor held in Debtor's commingled

8 | bank accounts as of the petition date.  The clarification

9 | order was issued based on an emergency motion by the FTC

10 | without a hearing and without Debtor having any opportunity

11 | whatsoever to oppose that emergency motion.  Any post-

12 | petition determination by the Florida Court regarding the

13 | Debtor's and the bankruptcy estate's interest in Debtor's

14 | commingled bank accounts as of the petition date was not

15 | made on the merits and collateral estoppel would not apply.

16 | Because this Court finds that Debtor's proposed

17 | amended complaint is not collaterally estopped, the argument

18 | of the FTC that the FTC would be unduly prejudiced by the

19 | amendment because the amendment would force the FTC to re-

20 | litigate yet again an issue that Debtor is collaterally

21 | estopped from litigating is overruled.

22 | The FTC further argues that the FTC's appeal to

23 | the District Court of this Court's preliminary injunction

24 | issued in this adversary proceeding divests this Court of

25 | jurisdiction to permit Debtor to amend its complaint.

1 Quoting from <u>In re Padilla</u>, 222 F3d, 1184, 9th Circuit

2 (2000). However, the FTC fails to quote the rest of the

3 paragraph, noting that the judge-made doctrine divesting the

4 lower court of jurisdiction over aspects of the case

5 involved in an appeal is not absolute.

6 Are either of you carrying a cell phone that is

7 on?

8 MR. SACKS: No, Your Honor.

9 THE COURT: Is there anybody on the phone that has

10 a cell phone that's on?

11 MR. OETZELL: No.

12 MS. GUERARD: No, Your Honor.

13 THE COURT: Okay. Because we're getting static

14 here, and that's often caused by cell phones. Okay. If

15 anybody has a cell phone that's on, for example on your

16 person or near you, on the phone, please turn it off or take

17 it to another room.

18 I'll repeat the last sentence. However, the FTC

19 fails to quote the rest of that paragraph, noting that the

20 judge-made doctrine divesting the lower court of

21 jurisdiction over aspects of the case involved in an appeal

22 is not absolute. The full paragraph reads:

23 "The rule divesting lower courts of jurisdiction

24 of aspects of the case involved in an appeal is a

25 judge-made doctrine designed to avoid the

1              confusion and waste of time that might flow from

2              putting the same issue before two courts at the

3              same time.  This rule is not absolute.  For

4              example, a District Court has jurisdiction to take

5              actions that preserve the status quo during the

6              pendency of an appeal but may not finally

7              adjudicate substantial rights directly involved in

8              the appeal.  Absent a stay or supersedeas, the

9              trial order also retains jurisdiction to implement

10             or enforce the judgment or order but may not alter

11             or expand upon the judgment."

12   _Padilla_, 222 F3d, 1190.

13          Now I'd like to ask you a question, Mr. Sacks.  Is

14   it correct that this whole tracing issue and the whole issue

15   of what interest the Debtor had and the Receiver had in the

16   Debtor's commingled funds is not in fact before the Eleventh

17   Circuit?

18          MR. SACKS: Well, I think that's correct, Your

19   Honor.  It's not in front of the Eleventh Circuit in the way

20   the Court described.  What we've said is that the Receiver

21   does not have a --

22          THE COURT: Well, you said where.

23          MR. SACKS: In the Eleventh Circuit, and in the

24   Florida Court for that matter, we've said that the Receiver

25   cannot prove liability on the part of Integretel without

1   having demonstrated an interest in specific property that

2   then would have to be turned over pursuant to the

3   injunction.  So the same issue relates to both questions.

4   One, whether there's any liability at all, and the second

5   question that we want to raise here which is whether any

6   liability there is would attach to specific funds that we

7   brought into the bankruptcy with us.

8            THE COURT: Okay.  But is there an overlap of those

9   issues such that the issue presently before the -- that

10  you're seeking to put before me is in fact before the

11  Eleventh Circuit?

12           MR. SACKS: I don't think so.  The problem is that

13  the Receiver and the Federal Trade Commission argue that by

14  merely raising those things that that creates an overlap,

15  and we don't think it does.  We've said to the Eleventh

16  Circuit that the clarification order was improper because

17  this Court has exclusive jurisdiction, for instance.  We say

18  that here, but we're not doing more than coming here and

19  saying that what we need to do is determine whether the

20  Receiver has any interest in the funds that were in our bank

21  accounts at the time of bankruptcy, which is not a question

22  that's been ruled upon in the Florida Court and is not

23  before the Eleventh Circuit.

24           THE COURT: Okay.  I'll allow Mr. Mora or Mr.

25  Oetzell or both to respond at this time since I asked Mr.

1  Sacks that question.

2         MR. OETZELL: Your Honor, Walter Oetzell.  I

3  believe it's clearly before the Court, and it would be

4  astounding to me if the representative of the Debtor would

5  go before the Eleventh Circuit in respect of the breadth of

6  the issues that the Eleventh Circuit has taken on itself to

7  decide and not argue that the equity receivership action

8  required tracing.  Indeed, we have said in our pleadings and

9  demonstrated in our pleadings several times that that was an

10 issue that was raised before the Eleventh Circuit and as

11 Your Honor recalls, the -- excuse me, the not the Eleventh

12 Circuit, the District Court -- and as Your Honor recalls the

13 District Court replied something to the effect that it was a

14 distinction without a difference.

15         It was an issue that was brought up so undoubtedly

16 it will be an issue on appeal, and the Eleventh Circuit has

17 said it has jurisdiction over the clarification order, and

18 that order stated that the funds were property of the

19 receivership, not property of the Debtor, not property of

20 the estate.  The Eleventh Circuit has said that it has

21 jurisdictions over -- or more precisely it is carrying with

22 it the question of whether it has jurisdiction over the

23 portions of the September 14th order, which of course is the

24 omnibus order, finding that the funds were receivership

25 property and directing turnover of that property.  Again, it

1  would be astounding to me and, you know, that the

2  representative arguing in front of the Eleventh Circuit in

3  such a broad situation would not be arguing that tracing was

4  required and not performed.

5          THE COURT: Mr. Mora, did you want to say

6  something?

7          MR. MORA: Yes, Your Honor.  Michael Mora for the

8  Federal Trade Commission.  Your Honor, I have before me

9  which of course the Receiver -- I mean I'm sorry, the Debtor

10  itself could file with the Court as a matter of judicial

11  notice -- I have before me the brief, the appellate brief,

12  that the Debtor filed just this Tuesday I believe, before

13  the Eleventh Circuit, and if the Court permits me, I could

14  make a proffer by way of just reading verbatim from the

15  heading of the argument.

16          THE COURT: Sure.  And if you want to read specific

17  text, you may.

18          MR. MORA: Thank you, Your Honor.

19          I'm reading just from the argument headings, and I

20  think that's enough.

21          THE COURT: Before you do that, Mr. Mora --

22          MR. MORA: The argument headings --

23          THE COURT: Mr. Mora?

24          MR. MORA: Yes, Your Honor.

25          THE COURT: Before you do that, have you read the

1  briefs in the Eleventh Circuit?

2          MR. SACKS: Yes, Your Honor.

3          MR. MORA: Have I read them?

4          THE COURT: No, no, I was pointing to Mr. Sacks.

5  I'm sorry.

6          MR. SACKS: There's one brief that's been filed,

7  and that's Integretel's brief, and I'm familiar generally

8  with that brief.

9          THE COURT: You've read it.

10          MR. SACKS: I've read it.

11          THE COURT: Go ahead, Mr. Mora.

12          MR. MORA: Thank you, Your Honor.

13          Roman Numeral II of the argument section, the

14  heading for the whole section is, and I quote:

15              "The District Court erred in holding that the

16              reserve amounts were due and owing to the

17              Receiver, and that Integretel was holding them for

18              the former clients' benefits or on their behalf."

19  And then subsection c) of this argument, the argument

20  headings read as follows, subsection c):

21              "The reserve amounts were not due and owing, and

22              in any event, the former clients had no property

23              interests that the Receiver could have

24              distributed."

25  Subsection 1, subsection c):

1    "The reserve amounts were not due and owing."

2  Subsection 2 of that section:

3    "The former clients had no property interest in

4    the reserve funds."

5  End of quote.  Those are the argument headings from the

6  appellate brief that they just filed before the Eleventh

7  Circuit this week.  And it's our position that precisely the

8  same, the identical issue is what they seek to add to their

9  complaint with this motion.

10    THE COURT: Go ahead, Mr. Sacks.

11    MR. SACKS: Your Honor, that's not correct.  We

12  don't seek to add precisely the same issue at all.  The

13  question of whether there is liability on the part of

14  Integretel pre-bankruptcy to the Receiver is completely

15  different than the question of whether post-bankruptcy the

16  Receiver has any interest in the funds that we started this

17  bankruptcy with, and that issue that we seek to present --

18  the latter issue is what we seek to present here.

19    It's never been adjudicated in Florida as the

20  Court noted earlier in its earlier ruling.  The Florida

21  Court made no reference to any specific funds and any

22  interest that the Receiver had never attached to any

23  specific funds, and so the question is a normal one in a

24  Bankruptcy Court which is, does the Receiver, as a result of

25  a State Court or Federal Court adjudication, have some

1  interest in the Debtor's -- the property in the Debtor's
2  possession, and whether it's a lien or ownership or trust or
3  whatever it is, that's the job of this Court.

4       And we obviously still have to litigate in Florida
5  or in the Eleventh Circuit now whether there's any liability
6  at all, whether the Florida Court in fact got it wrong and
7  those headings refer to the argument that since there was
8  never any property interest at all to begin with, whether
9  that precluded the Florida Court from finding that we had to
10 turn over something.  Even though they couldn't find
11 something to turn over, the Florida Court nonetheless
12 ordered us to pay money to the Receiver, and we argue that's
13 improper because without a specific thing that was being
14 held, the segregated fund, it was improper to do in Florida
15 to begin with.

16      THE COURT: If I understand what you just said, I'd
17 like to repeat it, and then I'd like you to tell me whether
18 I've understood it correctly.  That the issue of whether or
19 not what the Florida Court did is before the Eleventh
20 Circuit in all its respects, including the question about
21 whether the Florida Court could order funds be turned over
22 to the Receiver by the pre-bankruptcy Debtor because there
23 was no tracing.

24      That issue is before the Eleventh Circuit.  The
25 issue that you say is before me is whether something or

1  everything changed as of the date the Debtor filed for

2  bankruptcy, so that the distinction is everything that

3  occurred prior to the bankruptcy is before the Eleventh

4  Circuit, and everything that occurred as of the minute of

5  the bankruptcy and subsequent to that is before me.  Now is

6  that correct?  Because if you have raised the issue of

7  tracing with respect to the pre-bankruptcy Debtor, and that

8  issue is being litigated by the -- adjudicated by the

9  Eleventh Circuit, then I can't adjudicate it.  But I may

10  misunderstand what you're saying, but I have to tell you

11  that I'm not entirely clear what you're saying.

12         If the issue of tracing -- if there had never been

13  a bankruptcy, let's put it that way -- there had never been

14  a bankruptcy -- then of course I wouldn't be here, but if

15  there had never been a bankruptcy, then all of the issues

16  regarding tracing and whether what the Florida Court did was

17  right or wrong would be before the Eleventh Circuit.

18  Subsequent, when there was a bankruptcy, the question is

19  what I got and what I got is whether -- as because of the

20  bankruptcy, not because of a failure to pre-petition trace,

21  but because of the bankruptcy, I got some -- that there's --

22  and because you have possession of these funds and there's a

23  bankruptcy, that those issues are not before the Eleventh

24  Circuit.

25         But if I'm missing it, then you have to clarify

1  it.

2          MR. SACKS: No, I think Your Honor is on the right

3  track and --

4          THE COURT: That's not a very specific statement.

5  That sounds like I have some of it right and some of it

6  wrong.

7          MR. SACKS: No, I think you have it right, and I

8  think that it is comparable to the issue of a State Court or

9  a pre-bankruptcy court adjudication as to who owns a piece

10  of property, and you can continue to litigate that issue in

11  the original forum, but this Court would have to decide if

12  the Debtor, alleged Debtor, then filed for bankruptcy,

13  whether whatever the State Court's adjudication was, whether

14  that created a lien or other interest in the property, such

15  that it should be enforced in this Court to the exclusion of

16  other, for example, secured creditors.  You've heard from

17  secured creditors in this case, that they think they have an

18  interest in all of Integretel's bank accounts and to the

19  disadvantage of unsecured creditors who say that the

20  Receiver's claim is no different than every -- most other

21  unsecured creditors in this case who similarly had an

22  interest in reserves like that that the Receiver claims.

23          In other words, each of the customers who had

24  reserves deducted from the payments that they received could

25  go to court, assuming there was no bankruptcy here, get an

1 order like the one the Receiver got in theory that says you

2 owe us money, and then this Court wouldn't feel compelled to

3 stand aside merely because there was still a dispute about

4 whether they even owed the money, and so I think this Court

5 still has to decide that post-bankruptcy question.

6         MR. MORA: Your Honor, may I respond?  This is

7 Michael Mora.

8         THE COURT: Yeah.  Wait a second.

9         MR. MORA: Your Honor?

10         THE COURT: Wait a second, Mr. Mora.  Just wait one

11 second.

12         MR. SACKS: Your Honor is not speaking into the

13 microphone, so they may not be able to hear.

14         THE COURT: Wait a second.

15         MR. MORA: Thank you.

16         THE COURT: Okay.  Go ahead, Mr. Mora.

17         MR. MORA: Thank you, Your Honor.  Your Honor, we

18 think that the only real way to resolve this is for the

19 Court to have before it the appellate brief that they just

20 filed.  And secondly, in response to the argument that was

21 just made, one thing that is different about where the FTC

22 stands on this is that we're not just an ordinary private

23 creditor.  The law enforcement action in Florida is a

24 consumer fraud case.  It's a fraud case.  The proceeds that

25 the Receiver is seeking to recover in the contempt

1  proceeding are fraud proceedings, and the receivership

2  proceeding is a Federal equity receivership ancillary to a

3  consumer fraud case.  Those are all fundamental distinctions

4  that take it out of any analysis that this is just an

5  ordinary claim of a creditor with an ordinary contract

6  claim.  It's not that at all.

7         THE COURT: Except that once the bankruptcy is

8  filed, what authority do you have that once a bankruptcy is

9  filed, that all of a sudden you're catapulted because it's a

10  fraud enforcement proceeding into the status of having your

11  claim superior to that of secured creditors and superior to

12  that of the law that requires tracing for a constructive

13  trust in order for a Bankruptcy Court to adjudicate that

14  these are not funds that are property of the estate.  What

15  authority is there that this enforcement proceeding allows

16  me to prefer you over other creditors either secured or

17  unsecured.  What specific case does that?  What statute does

18  that?

19         MR. MORA: Your Honor, it's not a catapult at all.

20  It rests solidly on the rulings that the District Court

21  issued in particular the omnibus order and the contempt

22  proceeding which lays out --

23         THE COURT: But the omnibus order was pre-

24  petition -- wait a second, Mr. Mora --

25         MR. MORA: Yes, Your Honor.

1          THE COURT:  -- the omnibus order was pre-petition.

2          MR. MORA: Yes, that's correct.

3          THE COURT: Okay.  So you have whatever rights you

4    have pursuant to the omnibus order as long as the omnibus

5    order stands, but how does that affect what rights you have

6    in a bankruptcy case?

7          MR. MORA: Well, Your Honor, to begin with, the

8    property rights are determined in accordance with non-

9    bankruptcy law in the first instance, and the relevant

10   rights of the FTC and the Receiver and the ancillary

11   receivership proceeding are derived from the law of equity

12   receivership, number one; number two, the injunctive orders

13   that the District Court issued in the Florida case, and

14   number three, the rulings that that court made sitting in

15   that equity receivership proceeding to enforce its own

16   equitable injunctive orders.  And all of that law, we have

17   laid it out in various briefs that we have filed, both in

18   these injunctive proceedings and also in the cash collateral

19   proceeding, and of course it is all laid out in the District

20   Court's omnibus order.  There's a whole body of case law,

21   much of it from the Ninth Circuit --

22         THE COURT: But not bankruptcy case law.

23         MR. MORA: No, because bankruptcy case law is not

24   where our property rights come from, Your Honor.

25         THE COURT: Except that -- well, okay.  I

1   understand.

2           MR. OETZELL: Your Honor, it's Walter Oetzell.

3           TH COURT: Yes, Mr. Oetzell.

4           MR. OETZELL: The answer at least in respect to the

5   Federal Receiver concerning this catapulting to the top

6   question is that we're not being catapulted to the top in

7   respect to the claim.  We have a determination that this is

8   our property.

9           THE COURT: What is your property?

10          MR. OETZELL: The receivership funds, 1.8 million

11  dollars of them.

12          THE COURT: But they're commingled funds, and in a

13  bankruptcy --

14          MR. OETZELL: Well, you know, that has already --

15          THE COURT: Mr. Oetzell, you're a bankruptcy

16  lawyer; are you not?

17          MR. OETZELL: Yes, sir.

18          THE COURT: Okay.  So in a bankruptcy context, what

19  does that mean, that these commingled funds are your funds;

20  what does that mean to a Bankruptcy Court?

21          MR. OETZELL: Your Honor, the answer is --

22          THE COURT: What does that mean in a bankruptcy

23  case?

24          MR. OETZELL: Is that what Mr. Mora said is

25  correct, and that is, that property rights are determined by

1 State law.  Those property rights have been determined by

2 State law in the District Court of Florida.  The issue is

3 the question of the extent to which tracing was determined

4 in Florida, and indeed I think we all agree that if tracing

5 was raised and determined in Florida, then that is for the

6 Eleventh Circuit to decide.  The fact that it's a bankruptcy

7 case did not give the Debtor any greater rights or any

8 lesser rights in property than it had right before the

9 bankruptcy.

10        THE COURT: How about the Debtor's right to

11 possession?

12        MR. OETZELL: The Debtor's right to possession does

13 not convert it into –- the fact of Debtor's possession does

14 not automatically convert it into property of the estate.  I

15 know that has been shaded by the Debtor on several

16 occasions, but it doesn't happen to be the case.  But it

17 goes back to the issue of whether or not they brought up the

18 issue of tracing in the State Court action, and I will

19 read –- did I say State Court –- I mean the District Court

20 action, and I will read to you here from the omnibus order.

21 It is page 3 of the omnibus order, page 10 of our exhibit to

22 the declaration of David Chase filed early on in this case,

23 and it's the second paragraph.  Integretel maintains that,

24 quote:

25             "The reserves do not take the form of any actual

1    funds that Integretel has segregated or otherwise

2    set aside and maintains that it keeps the reserve

3    in a pooled account it tracks via an internal

4    accounting entry."

5    THE COURT: Your voice is starting to trail off,

6    Mr. Oetzell.  You've got to keep your voice up and speak

7    slower.

8    MR. OETZELL: Where did I trail off?

9    THE COURT: When you were quoting.

10   MR. OETZELL: I will repeat.  This is the second

11   paragraph, page 3 of the omnibus order, page 10 of our

12   exhibit to the declaration of David Chase.

13   "Integretel maintains that the reserves do not

14   take the form of any actual funds that Integretel

15   has segregated or set aside and maintains that it

16   keeps the reserves in a pooled account it tracks

17   via an internal accounting entry.  Such is a

18   distinction without a difference since the TRO

19   captures all funds held on behalf of or for the

20   benefit of defendant."

21   I will also read from the declaration of Mr. Dawson which

22   was filed in respect of the Debtor's response to a

23   memorandum of law why Integretel should not be held in

24   contempt.  That's Exhibit E to our declaration of David

25   Chase, page 246.  This is Mr. Dawson's words, paragraph 9:

1          "The IGT reserves relating to Access One and

2          Network One do not take the form of a segregated

3          fund of money, rather they represent nothing more

4          than a bookkeeping entry.  Thus Integretel holds

5          no identifiable pool of money that one can point

6          to as constituting the IGT reserves for these

7          clients."

8          This issue has been raised in the District Court.

9     This issue has been decided in the District Court, and this

10    issue is now on appeal before the Eleventh Circuit and it is

11    these concepts and these words that Mr. Sacks described to a

12    "T."

13         THE COURT: All right.  Wait a second.  Mr.

14    Oetzell, it seems to me that you both agree on something,

15    although I don't know whether Mr. Sacks will say this.  It

16    seems that to the extent that the District Court determined

17    what Integretel's pre-petition rights were, vis-a-vis the

18    Receiver, that that issue is on appeal to the Eleventh

19    Circuit.  To the extent that the bankruptcy filing changed

20    anything, that issue is before me, and that they have a

21    right to file a complaint that says that.  And if we make

22    that distinction, if that conforms with both of your

23    understandings, then I can deny the motion to dismiss and

24    allow the complaint, with the understanding that the

25    distinction that I made is the distinction that the

1  complaint can raise.

2       Now, I haven't reviewed the complaint in the

3  context of this bright line, but it seems to me that that's

4  what you're both saying.  Now first, Mr. Oetzell, is that

5  correct?

6       MR. OETZELL: I guess the answer is theoretically

7  it is correct, but I would -- I do not see when we have a

8  determination of ownership and there was an issue that was

9  decided in the determination of ownership, I don't see what

10 bankruptcy changes.

11      THE COURT: Okay.  But that's saying --

12      MR. OETZELL: If the Debtor had my car --

13      THE COURT: Wait a second.  Mr. Oetzell, be quiet

14 for a minute.  That's fine.  But that could be part of the

15 complaint and that will be part of your motion for summary

16 judgment or whatever you're going to file in the new

17 complaint.  But you agree that theoretically -- you don't

18 think -- you think the distinction is correct and that they

19 don't have a winning case, but that's a different matter.

20      Now, Mr. Mora, do you agree?

21      MR. MORA: Hello?

22      THE COURT: Mr. Mora, do you agree?

23      MR. MORA: I'm sorry, Your Honor.  One moment.

24      THE COURT: What?

25      MR. MORA: I'm sorry, Your Honor.  One moment.  I

1  was having trouble with my phone.  Do I agree with --

2        THE COURT: What I said.

3        MR. MORA: I disagree entirely with the premise,

4  Your Honor, because the property rights of the Receiver and

5  the FTC in these disputed funds are the same as the day

6  before the petition as they were the day after.

7        THE COURT: But that begs the question, Mr. Mora.

8        MR. MORA: I'm sorry, Your Honor.  I misunderstand

9  the question then.

10        THE COURT: Okay.  If Mr. Sacks' position is that

11  anything that occurred before the bankruptcy is before the

12  Eleventh Circuit and that anything that occurred starting

13  with the bankruptcy filing is before me, then you can have

14  the position that nothing changed, but that begs the

15  question.  The question is whether he should be able to file

16  a complaint that says that any respective rights of the

17  parties that occurred as of the date of the petition are

18  before the Bankruptcy Court.

19        MR. MORA: In theory, but I don't think that's what

20  his complaint says.

21        THE COURT: Well, that's what I'm going to ask him.

22  So now back to you.  It seems to me that what the Florida

23  Court did pre-petition is, from your briefs -- now I could

24  have them send them up and look at them more carefully -- is

25  before the Eleventh Circuit.  And the effect of all that

1  because of the bankruptcy is before me, and they both agree

2  with that. They say it's a distinction without a

3  substantive meaning, but they both agree that that is in

4  fact the case. And if you agree to limit your complaint to

5  the effect as of the date of the petition, then we don't

6  have a substantive disagreement, and I can grant the motion

7  and overrule the motion to dismiss on that basis. But if I

8  misunderstand your position, then we're in terrible shape.

9  And if you don't understand your position, we're in terrible

10  shape. So if you want a continuance of this, I'll give you

11  a continuance. If you're ready to decide that, then I'm

12  ready to rule.

13          MR. SACKS: No, that's -- I think Your Honor has it

14  exactly right, which is that even if as either Mr. Mora or

15  Mr. Oetzell or both said, that the Florida District Court

16  gave them a property interest before bankruptcy, the

17  question here is whether that property interest translates

18  into an ownership of particular funds that we then have to

19  turn over to them.

20          THE COURT: In a bankruptcy case.

21          MR. SACKS: In a bankruptcy case, exactly, because

22  if Your Honor will recall, in the Memorandum of Decision I

23  believe it is, you cite and quote a case that says even if

24  somebody comes into bankruptcy with an ownership interest,

25  that still gets tested by doctrines like tracing if the

1  Debtor is in possession of the thing that the party claims

2  an ownership interest in.  And I think that's the

3  fundamental problem we have with their argument that because

4  they own it, we have to turn it over to them.  We say they

5  still have to do more than that, and they haven't and can't

6  do it.  And that's what we want to test with this complaint.

7           MR. OETZELL: I'm sorry, Your Honor.  An ownership

8  interest that has been determined under State law is not

9  reversible because of a nicety of bankruptcy law.

10          THE COURT: Okay.  But, Mr. Oetzell, I understand

11  your position and so maybe you'll win on a summary judgment.

12          MR. OETZELL: I mean that's nonsense.

13          THE COURT: Well, let's not -- I don't know whether

14  it's nonsense or not, but that issue isn't exactly before

15  me.  I'm not going to rule that it's futile for him to make

16  that argument at this point, and so it seems to me subject

17  to making a final decision today in the next few minutes,

18  that he's right and that you're right in the sense that

19  anything that occurred prior to the bankruptcy is before the

20  Eleventh Circuit; anything that occurred as of the minute of

21  the bankruptcy is before me, and the complaint can so state.

22  And if you think that he's incorrect as a matter of law in

23  his position, that's fine, but it certainly does not --

24  there's no problem with issue preclusion because the issue

25  that he is raising, however strong or not strong that issue

1  is, is not before the Eleventh Circuit.

2          MR. OETZELL: Your Honor, I understand, and I agree

3  with the idea that it would be proper in a bankruptcy

4  context to determine in light of the Code and the filing of

5  the bankruptcy what is the effect of that interest that has

6  been decided in the District Court.  But it's something

7  altogether different to say well, okay, we're going to

8  decide if that interest is still an ownership interest in

9  view of the Bankruptcy Code.  The answer is it is.  It was

10 an ownership interest before; it's an ownership interest

11 now.

12         THE COURT: Well, the Eleventh Circuit is going

13 to --

14         MR. OETZELL: The effect of it is something

15 altogether different.

16         THE COURT: Mr. Oetzell, the Eleventh Circuit is

17 going to decide whether it's an ownership interest at all.

18         MR. OETZELL: Correct.

19         THE COURT: And so -- but I'm going to decide,

20 based on everybody's understanding today, I'm going to

21 decide whether the fact of the bankruptcy had an effect on

22 the interest, if, you know, as determined by the Eleventh

23 Circuit.

24         MR. OETZELL: I understand, Your Honor, and just

25 let me say I feel that the Court's role in deciding the

1  effect of the interest that has been determined is certainly

2  appropriate, but the idea of the bankruptcy law having an

3  effect on that interest is another story, and that I believe

4  is inappropriate in our context because of the issue

5  preclusion and collateral estoppel, and indeed is what both

6  the FTC and we have argued.

7          THE COURT: Okay.  Thank you.

8          MR. OETZELL: That's the point that makes them --

9  that makes the proposed amended complaint improper.

10         THE COURT: All right.

11         MR. MORA: Your Honor, may I be heard just one more

12  time briefly?

13         THE COURT: All right.

14         MR. MORA: Thank you, Your Honor.  Michael Mora for

15  the FTC.  Your Honor, if the Court and Integretel will allow

16  me, I would just like to make another proffer by reading

17  from their appellate brief that they just filed, because you

18  will see that even the argument that Your Honor is

19  theorizing their amended complaint is limited to is an

20  argument that they have made to the Eleventh Circuit.  May

21  I, Your Honor?

22         THE COURT: Sure.

23         MR. MORA: And I am quoting now from pages 50 to 51

24  of Integretel's Eleventh Circuit brief:

25         "But if the Court nevertheless reaches that issue,

1          meaning the property of the estate issue, it

2          should hold that the District Court was mistaken.

3          Anyone who claims ownership property owed by a

4          debtor in bankruptcy must show that it has an

5          interest in particular dollars in the debtor's

6          possession or control.  To reclaim money ..."

7   And there are citations here to cases but I'm not reading

8   those.

9          THE COURT: I can't hear you, Mr. Mora.

10          MR. MORA: There are citations to cases here that I

11  was going to omit those unless Your Honor would like the

12  citations.

13          THE COURT: No, no, that's all right.  Go ahead.

14          MR. MORA: The next sentence begins:

15          "To reclaim money or property from a bankruptcy

16          estate on the basis that the property belongs to

17          the reclaiming party and not the debtor, the

18          reclaiming party must be able to definitively

19          trace its property.  Commingled funds in an

20          account under the debtor's unrestricted control

21          are presumed to be property of the estate.  And to

22          overcome that presumption, the Receiver had the

23          burden of specifically and directly tracing money

24          in Integretel's bank accounts back to funds

25          received by Integretel on accounts of the former

1          clients' transactions.  If the property in which

2          he asserts an interest cannot be positively

3          identified, he is relegated to the status of a

4          general unsecured creditor regardless of the

5          equities."

6  End of quote.

7          THE COURT: Thank you, Mr. Mora.  We'll go off the

8  record a minute.  Thank you.

9      (Off the record.)

10         MR. LITVAK: Your Honor, can I make a suggestion?

11         THE COURT: Sure.

12         MR. LITVAK: This is Max Litvak for the Creditors'

13 Committee.  The only request before the Court today is the

14 Debtor's request for leave to amend the complaint.  I think

15 what the FTC is essentially asking the Court to do is to

16 dismiss the substantive cause of action that the Debtor

17 seeks to --

18         THE COURT: Yeah, I've already -- let me see if

19 I've got -- I think I know what you're going to say.  I'm

20 inclined to allow the amended complaint with the

21 understanding that it's subject to the right of the FTC to

22 file a motion to dismiss.  It's subject to 12(b)(6).  It's

23 subject to a motion to stay.  It's subject to everything.

24 There's enough confusion about what is or isn't before the

25 Eleventh Circuit and being argued before the Eleventh

1  Circuit as of this point, and Mr. Mora wants to supplement

2  the record in that respect, so I think you should go back

3  and figure out what your amended complaint should say,

4  whether it's exactly the amended complaint you have here or

5  whether you need a slightly different amended complaint.  Go

6  ahead and file your amended complaint, and then it's without

7  prejudice to the FTC or the Receiver filing whatever it is

8  that they want to file and then Mr. Mora can include

9  whatever it is that he wants to in the motion and I'll deal

10 with it in that context.  Is that what you were going to

11 suggest?

12        MR. LITVAK: That was it, Your Honor.

13        THE COURT: Right.  And that's what I had decided

14 when I walked in.  So that's fine.  So you're prescient.

15 And it's not clear to me that it's futile, so we'll see in

16 the context of the motions that will follow your amended

17 complaint.

18        Now, the only other issues before the Court are

19 the -- the issue of the Knudsen order.  Are you here to talk

20 about that or are you here to talk about that?  Who's here

21 to talk about that?

22        MR. SACKS: We're both here to talk about that,

23 Your Honor.

24        THE COURT: Good.  Okay.  So have you made an

25 agreement that it's ten days that the person who's seeking

1  the fees has to set up the hearing and then it'll be every

2  four months, not every three months?

3          MR. SACKS: Those are in the present draft of the

4  order; that's correct, Your Honor.

5          THE COURT: The motion shouldn't include

6  professionals that are not yet appointed.  The as yet to be

7  appointed professionals can include a request to have fees

8  paid under the Knudsen order.  I don't want to deal with

9  people who aren't before the Court.  And notice of the fee

10 apps obviously has to be served on the Debtor.  The Debtor

11 isn't listed there.  But the Debtor has to get notice of

12 everything.  And then all creditors have to get notice that

13 this is what was happening so that if they want to be on the

14 special notice list, they can be.  So in the notice to

15 creditors that says that this is the way the procedure is

16 going to work, they have to be told that the only way for

17 them to get notice of these interim requests is to be on the

18 special notice list and tell them how to do it.  So they

19 have to be able to know how to protect that right if they

20 want to.  They may not want to, but they have to get this.

21          MR. SACKS: Your Honor, we recently sent to all

22 creditors the Court's order limiting notice, and advised

23 creditors that if they wanted notice of things beyond --

24          THE COURT: Specifically fee apps?

25          MR. SACKS: Well, I don't have it in front of me

1  today --

2          THE COURT: Well, you better have it in front of

3  you because I want to make sure that the creditors know from

4  either that or what goes out now that if they want notice of

5  fee apps, they have to ask for special notice, and I want

6  that to be in very specific direct language.

7          MR. SACKS: Okay.  Why don't we do that then, Your

8  Honor.  I will check the form of the order limiting notice

9  and of the notice that we served pursuant to that, and if it

10 didn't specifically refer to we need to ask for special

11 notice for fee applications, we will serve a new notice.

12         THE COURT: Well, it can just be part of the order

13 approving this procedure too, that they get served on

14 everybody and then there's a big -- with nice big letters

15 saying that if you're a creditor and you want to get notice

16 of the fee apps, then you have to file a special notice

17 request and here's the address to which you do it.

18         MR. SACKS: So you're saying that regardless of

19 what we did before, we should just serve this order

20 approving the Knudsen order on all creditors.

21         THE COURT: That's what I would do.

22         MR. SACKS: We could do that, Your Honor.

23         THE COURT: Okay.  And then as far as the motion to

24 appoint the Committee as the estate representative, that

25 hasn't been opposed, right?

1    MR. SACKS: That's correct, Your Honor.

2    THE COURT: All right.  And that's approved.

3 That's fine.  The motion is properly noticed and appears to

4 be in the best interest of the creditors and the estate.

5    MR. LITVAK: With respect to the Knudsen motion, we

6 actually had an objection from the Receiver to the effect

7 that they don't --

8    THE COURT: Oh yeah, yeah.  The Receiver -- we're

9 not going to -- any fees of Pachulski related -- the Knudsen

10 order doesn't cover any fees of Pachulski that relate to

11 opposing the Receiver in any way until that issue is

12 resolved.

13    MR. LITVAK: Okay.

14    THE COURT: One way or the other.

15    MR. LITVAK: That's fine, Your Honor.

16    THE COURT: Does that take care of your concern,

17 Mr. Oetzell?

18    MR OETZELL: That's fine with me, Your Honor.

19    THE COURT: Thank you.  Is there anything else that

20 I need to do today?

21    MR. SACKS: No, Your Honor.  The only other thing I

22 was going to ask is that we get the order appointing estate

23 representative entered in the courtroom if we could because

24 there's an answer due to that complaint on Monday, so it

25 would be useful to have the order appointing the Committee.

1         THE COURT: Is there an order?

2         MR. SACKS: Yes.

3         THE COURT: Have you uploaded it?

4         MR. SACKS: I don't think it's been uploaded.  I

5  think we just brought it with us today.  But we could upload

6  it if the Court prefers, and handle it that way.

7         THE COURT: I have no preference.  I just didn't

8  understand why you didn't just upload it.  But that's fine.

9  Give me the -- I guess you can't upload it because it can't

10 be done pre-hearing.  That's fine.  Thank you.

11        Go off the record.

12     (Whereupon, the proceedings are concluded at 2:04 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6          I certify that the foregoing is a correct

7   transcript from the digital sound recording of the

8   proceedings in the above-entitled matter.

9

10  DATED: December 27, 2007

11

12                        By:___/s/ Jo McCall_____

13

14

15

16

17

18

19

20

21

22

23

24

25