SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN SACKS, Cal. Bar No. 98875
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

Bankruptcy Reorganization Counsel
for Debtor and Debtor-in-Possession
The Billing Resource, dba Integretel

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 07-52890 ASW |
| THE BILLING RESOURCE, dba INTEGRETEL, a California corporation | Chapter 11 |
| Debtor. | **THIRD INTERIM APPLICATION OF SHEPPARD, MULLIN, RICHTER & HAMPTON LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS BANKRUPTCY REORGANIZATION COUNSEL FOR THE DEBTOR** |

Date:         November 7, 2008
Time:         1:15 p.m.
Place:        United States Bankruptcy Court
              280 South First Street
              San Jose, California
Judge:        Hon. Arthur S. Weissbrodt
Courtroom:  3020

W02-WEST:5KES1\401042159.2                                    THIRD INTERIM FEE APPLICATION

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF SERVICES ................................................. 1

II. RELIEF REQUESTED AND BASIS FOR RELIEF .................................................. 3

III. BANKRUPTCY CASE SUMMARY AND STATUS .............................................. 4

    A.    General Background .......................................................................................... 4

    B.    Case Status ........................................................................................................ 4

    C.    The Adversary Proceeding Filed by the Debtor Against the FTC and the Receiver .......................................................................................................... 5

    D.    The Adversary Proceeding Filed by the Voicemail Plaintiffs ........................ 5

IV. RETENTION AND PRIOR COMPENSATION .................................................... 5

V. EXHIBITS TO APPLICATION ............................................................................. 6

VI. SUMMARY OF PROFESSIONAL SERVICES RENDERED ................................ 7

VII. SUMMARY BY PROJECT BILLING CODES ..................................................... 7

    A.    Maintenance of Records ................................................................................... 7

    B.    Use of Project Billing Categories .................................................................... 7

            1.    Corporate Issues/Corporate Consents/Minutes/SEC Work/Office and/or Board of Directors ............................................................... 8

            2.    Employee Benefits/Pensions ................................................................ 8

            3.    Employee Matters ................................................................................ 8

            4.    Insurance Issues .................................................................................... 9

            5.    Case Administration ............................................................................. 9

            6.    Meetings-Communications w/Creditors ............................................... 9

            7.    Case Administration – General ............................................................ 9

            8.    Committee Matters/Communications ................................................... 9

            9.    Operating Reports – Monthly or Quarterly ........................................ 10

           10.    Operations ........................................................................................... 10

W02-WEST:5KES1\401042159.2                  THIRD INTERIM FEE APPLICATION

11. Business Operations ............................................................................. 10

12. Service Lists ..................................................................................... 10

13. Tax Issues ........................................................................................ 10

14. Claims Administration ......................................................................... 10

15. Claims – Tax ..................................................................................... 11

16. Claims - Unsecured ............................................................................. 11

17. Plan of Reorganization ........................................................................ 11

18. Bankruptcy Court Litigation ................................................................ 11

19. Discovery .......................................................................................... 11

20. Early Case Administration Motions/Pleadings ........................................ 12

21. Federal Court Litigation ...................................................................... 12

22. Other Litigation ................................................................................. 12

23. Discovery - Defensive ......................................................................... 12

24. Responding to Interrogatory Requests .................................................. 13

25. Knudsen Motion ................................................................................. 13

26. Professional's Compensation (other than Sheppard)................................. 13

27. Professional's Employment (other than Sheppard) ................................... 13

28. Sheppard Compensation........................................................................ 13

29. Sheppard Employment ......................................................................... 14

30. Asset Disposition ................................................................................ 14

VIII. COMPENSATION FOR SERVICES OF LEGAL ASSISTANTS ........................... 15

IX. SUMMARY OF SHEPPARD'S EXPENSES ................................................... 15

X. COMPLIANCE WITH GUIDELINES ............................................................ 16

XI. CONCLUSION ......................................................................................... 17

W02-WEST:5KES1\401042159.2                                          THIRD INTERIM FEE APPLICATION

## I.

## INTRODUCTION AND SUMMARY OF SERVICES

This is the third interim fee application (the "Application") of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard") for allowance of compensation and reimbursement of expenses incurred from May 1, 2008 through August 31, 2008 (the "Application Period") as bankruptcy reorganization counsel for the Billing Resource, dba Integretel, the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (the "Bankruptcy Case").

A separate notice (the "Notice") regarding this Application, as well as the interim fee applications filed by certain other professionals in this Bankruptcy Case, is being served upon required parties. The Notice provides details regarding the hearing before this Court with respect to this Application as well as the deadline and procedures for filing and serving any oppositions to the relief sought in this Application. All entities are encouraged to carefully read the Notice.

Sheppard's request for relief is based on this Application, the Notice, the declaration of Michael H. Ahrens filed in support of the Application, and all related documents and pleadings previously filed, or that may be filed, prior to the hearing on this Application.

On December 19, 2007, this Court entered its "Order Approving Interim Compensation And Reimbursement Procedures For Professionals" (Docket No. 354) (the "Knudsen Order"). Subject to the terms and conditions set forth therein, the Knudsen Order authorized professionals whose employment had been approved by the Court to be paid amounts representing 80% of such firm's fees and 100% of such firm's expenses on an interim basis prior to approval of a formal fee application.

As will be set forth in additional detail in other parts of this Application, Sheppard's efforts on behalf of the Debtor have led to significant results. At the time this case was filed there was a real possibility that the Debtor would be forced to liquidate at or before the end of 2007. Under such a scenario, the Debtor calculates that creditors would have received very little, if anything, on account of their claims. Sheppard, in cooperation with the Debtor, has worked very hard to avoid such a liquidation, and was able to move forward the sale process of the Debtor's assets. This

W02-WEST:5KES1\401042159.2                                                   THIRD INTERIM FEE APPLICATION

required a considerable amount of work on a short time frame during the Application Period. In particular, Sheppard accomplished the following for the Debtor during the Application Period:

a.      During the Application Period, the Debtor built on its work in the prior months for a sale of its assets and arranged sales of the Debtor's principal assets. Sheppard and the Debtor obtained entry of comprehensive bidding procedure orders for the sale of the Debtor's operating assets and its equity interest in Inmate Calling Solutions, LLC, and, separately, the sale of its interest in PaymentOne Corporation. Sheppard responded to inquiries from potential bidders, reviewed adequate assurance packages, analyzed and addressed the objections to the sale and requests for continuances and other relief, prepared notices to the parties and potential bidders, negotiated with potential bidders, attended court hearings leading up to the sale.

b.      Auctions were then held in conjunction with the hearing on the sale motions for all of these assets pursuant to the bidding procedures orders. After the auctions established that three different parties were successful bidders, Sheppard worked on getting the sales closed, preparing sale orders, and revising asset purchase agreements and related documents. Sheppard also reviewed and responded to one bidder's motion to enter a sale order. As a result of Sheppard's work in this regard, the Court recently entered orders approving the sale of the Debtor's main assets.

c.      During the application period, Sheppard also pursued or resolved various litigation matters.

(1)      Litigation/settlement with FTC & Receiver. Following a May meeting with the FTC and the Receiver, principles were established for a settlement of these disputes. Sheppard worked on drafting the settlement agreements and related documents. Sheppard then prepared a motion for approval of the settlement and obtained an order approving it. During the interim period, Sheppard has prepared stipulations and orders continuing the existing injunctions and providing for sufficient time for the parties to satisfy the conditions to closing of the settlements.

（2）    Litigation with Voicemail plaintiffs.  Sheppard, working with the Committee, negotiated a settlement of this dispute, and documented that settlement.  Approval was obtained in the context of the hearing on the sale of the Debtor's operating assets.

（3）    Seven Hills litigation.  Sheppard prepared and filed a complaint against this investment banker and then negotiated a settlement of the dispute.  Sheppard prepared a settlement agreement, obtained approval from the Court, and dismissed the adversary proceeding.

（4）    Tennessee litigation.  Sheppard has continued to monitor developments in the estate's litigation against the State of Tennessee for a tax refund.

    d.    Sheppard prepared and filed its second interim fee application and worked on applications for various other professionals employed by the estate, as well as the fee statements filed pursuant to the Court's Knudsen order.

## II.

### RELIEF REQUESTED AND BASIS FOR RELIEF

Sheppard seeks an order from the Court:  (1) granting interim approval of compensation for professional legal services rendered and reimbursement of expenses incurred as counsel for the Debtor from May 1, 2008 through August 31, 2008 totaling $526,928.14, consisting of $503,370.60 in professional fees (which amount is after a voluntary write-off by Sheppard of over $10,500.00 of fees incurred during the Application Period) and $23,557.54 in expenses; (2) ratifying any payments previously made to Sheppard for that time period pursuant to the Knudsen Order, which payments as of the filing of this Notice and Sheppard's Application totaled $426,254.02, consisting of $402,696.48 in fees and $23,557.54 in expenses pertaining to the period May 1, 2008 through August 31, 2008; (3) authorizing and directing the Debtor to make immediate payment to Sheppard of all allowed and outstanding amounts approved in its Application but not yet paid to Sheppard; and (4) granting such other and further relief as the

1  Court may deem just and proper.

2      This Application is made pursuant to the provisions of Bankruptcy Rule 2016 and Section

3  330 of title 11 of the United States Code (the "Bankruptcy Code"). Except as otherwise noted in

4  the pages that follow, the Application conforms with the guidelines (the "Northern District

5  Guidelines") for compensation and expense reimbursement for professional and trustees

6  authorized under Bankruptcy Local Rule 9029-1 and the United States Trustee's guidelines (the

7  "Trustee's Guidelines") for the compensation of professional persons. The Northern District

8  Guidelines and the Trustee's Guidelines are referred to together in this Application as the

9  "Guidelines."

10      In support of the Application, Sheppard respectfully represents as follows:

11

12                                      **III.**

13                  **BANKRUPTCY CASE SUMMARY AND STATUS**

14  A.      <u>General Background</u>

15      A general background discussion regarding the Debtor in contained in the First Interim

16  Application of Sheppard, Mullin, Richter & Hampton LLP for Allowance of Compensation and

17  Reimbursement of Expenses Incurred As Bankruptcy Reorganization Counsel for the Debtor filed

18  in the case on March 28, 2008 as Docket No 531 (the "First Interim Application"). The Debtor

19  refers to and incorporates the background discussion in the First Interim Application as fully set

20  forth in this Application.

21  B.      <u>Case Status</u>

22      The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on

23  September 16, 2007, commencing the Chapter 11 Case. The Debtor is operating its business as a

24  debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

25      The Debtor has entered into agreements for the sale of its principal assets and obtained

26  orders approving those agreements. It is currently seeking to close each of the three sales and it

27  expects the operating assets sale to close shortly, with the ICS sale to follow in 30 days or less,

28  and the PaymentOne sale at a date to be determined. It then intends to pursue confirmation of a

liquidating plan of reorganization.

C.     The Adversary Proceeding Filed by the Debtor Against the FTC and the Receiver

At the outset of this case, the Debtor initiated an adversary proceeding in order to obtain injunctive relief against the FTC and the Receiver to stay the continuation of the Florida Action and to enjoin the enforcement of an order from the U.S. District Court requiring the Debtor to pay the Receiver nearly $1.7 million.  The Court issued the requested injunctions.  As the result of Sheppard's efforts, the Debtor's negotiations with both the FTC and the Receiver have resulted in comprehensive settlements of the FTC and Receiver's disputes with the Debtor.  Because these disputes previously represented one of the largest obstacles besetting the Debtor, the Debtor considers the settlements to be a great success that will facilitate a favorable resolution of the Bankruptcy Case.  The Court has approved the settlements and the conditions to their effectiveness will be satisfied when the Debtor closes its sale of its operating assets.

D.     The Adversary Proceeding Filed by the Voicemail Plaintiffs

In January and March 2008, the Voicemail Plaintiffs filed adversary complaints against the Debtor, as well as Ken Dawson and Evan Meyer alleging the Debtor held millions of dollars in trust for them and asserting other claims for relief.  As part of the efforts to sell the Debtor's operating assets and the desire of the Voicemail Plaintiffs' principal to bid on those assets, a settlement was reached that resolved this proceeding and cleared the way for an overbid at the sale hearing.  The adversary proceeding will be dismissed at the time of closing of the operating assets sale.

**IV.**

**RETENTION AND PRIOR COMPENSATION**

On October 4, 2007, the Court entered its order authorizing the Debtor to retain Sheppard as its bankruptcy reorganization counsel (Docket No. 114) (the "Sheppard Employment Order"). A true and correct copy of this Sheppard Employment Order is attached to this Application as Exhibit A.

This is Sheppard's third interim fee application for payment of fees and reimbursement of

costs in this case. On March 28, 2008, an order of this Court was entered approving Sheppard's first interim fee application for allowance of fees of $952,972.00 and reimbursement of expenses of $52,107.26 incurred from September 14, 2007 through December 31, 2007, without prejudice to a renewed application for the reduction of $10,000.00 in fees and $2,971.49 in costs. On July 7, 2008, another order was entered approving Sheppard's second fee application for allowance of fees of $564,624.42 and reimbursement of expenses of $36,962.30 incurred from January 1, 2008 through April 30, 2008.

Sheppard has been paid $426,254.02 pursuant to the Knudsen Order on account of work performed during the Application Period.

## V.

## EXHIBITS TO APPLICATION

The exhibits attached to this Application are as follows:

A copy of the Sheppard Employment Order is attached as Exhibit A.

Detailed statements (the "Statements") of the services Sheppard performed and the out-of-pocket expenses Sheppard incurred during the Application Period are set forth on Exhibit B. The Statements set forth Sheppard's time and expense records as kept in the ordinary course of Sheppard's business, and contains the following information: the names of each attorney or paralegal performing services, the description of the services, and the amount of time incurred for their services. The Statement is organized in chronological order, separated by billing categories for each task or matter (each a "Project Billing Category") as required by the Guidelines. A summary of the professional fees incurred by each attorney or paralegal performing services, the hourly rate, the amount of time spent and related fees, is set forth on Exhibit B at page 67. A summary of Sheppard's expenses is set forth on Exhibit B at pages 69-74.

A summary of the Project Billing Categories used by Sheppard during the Application Period is attached as Exhibit C. That summary includes the total professional hours spent and the total fees requested under each category.

A copy of the resume of the paraprofessional who worked on this Bankruptcy Case during

1 the applicable time period is attached as <u>Exhibit D</u>.

2     A copy of Sheppard's letter to Ken Dawson, the Debtor's designated responsible

3 individual, and a copy of Sheppard's letter to Paul Weber, the Debtor's Chief Restructuring

4 Officer, forwarding them a copy of this Application and inviting discussion, questions, comments,

5 concerns or objections to the Application, are attached as <u>Exhibit E</u> and <u>Exhibit F</u>, respectively.

6

7 **VI.**

8 **SUMMARY OF PROFESSIONAL SERVICES RENDERED**

9     Sheppard spent a total of 886.90 hours in performing the services described in the

10 Application, at an average hourly billing rate of $495.42.

11 **VII.**

12 **SUMMARY BY PROJECT BILLING CODES**

13 A.    <u>Maintenance of Records</u>

14     In compliance with the Guidelines, Sheppard maintained its time records on a "Project

15 Billing" basis.  <u>Exhibit C</u> provides a summary of the Project Billing Categories, the total

16 professional hours spent in each category and the total fees requested for each category.

17 B.    <u>Use of Project Billing Categories</u>

18     A discussion of the work Sheppard performed in each Project Billing Category is set forth

19 in the paragraphs that follow.  Under the Guidelines, "[t]he maximum amount that should be

20 included in a single category should generally be $20,000.  This cap may be exceeded where

21 further breakdown is impractical."  <u>See</u> Northern District Guidelines, at § I.3.  In this Bankruptcy

22 Case, much of Sheppard's work focused on the Debtor's preparation for a sale of its assets, as well

23 as litigation with the FTC and the Receiver, and litigation with Enhanced Long Distance and other

24 parties affiliated with Nelson Gross.  Sheppard's work in these areas resulted in a beneficial result

25 for the Debtor, its creditors and the estate.  In some instances the fees for a single category of

26 project in this Application exceeded $20,000.  This is a result of the size and scope of certain of

27 the projects Sheppard performed .  Accordingly, it would be impractical to break down all of the

28 categories in this case to $20,000 or less.

W02-WEST:5KES1\401042159.2                        THIRD INTERIM FEE APPLICATION

It is inevitable that not all matters fit precisely into one category, or that some items fit appropriately into more than one category. Additionally, as in the case of telephone conferences or meetings where more than one subject is discussed, a time entry dealing with more than one subject must occasionally be placed in only one category. Thus, while Sheppard has diligently attempted to segregate its time into the appropriate category, there may be some overlap between and among categories.

In some cases, Sheppard has billed for the services of more than one person in connection with a meeting (either internal or external) or a conference call with a third party. Sheppard believes that this is justified here by the complexity and scale of this bankruptcy case the related litigation with the FTC and the Receiver, among others, and the interaction between that litigation and the related bankruptcy issues in this Court.

A discussion of the work performed in the Project Billing Categories follows below.

1.  <u>Corporate Issues/Corporate Consents/Minutes/SEC Work/Office and/or Board of Directors</u>

Sheppard spent a total of 2.80 hours and incurred fees totaling $1,666.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 2. The work that Sheppard performed in this Project Billing Category pertains primarily to reviewing and analyzing the corporate documents of the Debtor and the entities subject to the sale and addressing the consequences of the sale on their corporate structure.

2.  <u>Employee Benefits/Pensions</u>

Sheppard spent a total of 1.60 hours and incurred fees totaling $952.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 3.

3.  <u>Employee Matters</u>

Sheppard spent a total of 1.00 hour and incurred fees totaling $595.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 3. These services pertain to addressing issues regarding employee severance under the plan and vacation accrual.

### 4.   Insurance Issues

Sheppard spent a total of 2.80 hours and incurred fees totaling $1,666.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 4.  These fees were incurred in connection with addressing issues regarding the insurance of directors and officers.

### 5.   Case Administration

Sheppard spent a total of 0.40 hour and incurred fees totaling $124.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 5.  Generally, these fees were incurred in connection with the monitoring the docket.

### 6.   Meetings-Communications w/Creditors

Sheppard spent a total of 1.00 hour and incurred fees totaling $595.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 5.  Sheppard communicated with creditors regarding the status of the Bankruptcy Case.

### 7.   Case Administration – General

Sheppard spent a total of 3.50 hours and incurred fees totaling $1,040.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 7.  Throughout the Application Period, Sheppard performed general case administrative tasks typically required of bankruptcy reorganization counsel, including without limitation monitoring the docket for activity in the case, preparing checklists of open items, and coordinating the filing and service of pleadings.

### 8.   Committee Matters/Communications

Sheppard spent a total of 7.60 hours and incurred fees totaling $5,029.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 8.  Sheppard worked closely with counsel for the Committee during the Application Period.  Throughout the Application Period, Sheppard communicated with the committee and various creditors regarding the sale process and the progress of settlement efforts and to keep them updated on the status of the Bankruptcy Case.

9.  Operating Reports – Monthly or Quarterly

Sheppard spent a total of 1.30 hours and incurred fees totaling $773.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 8. Sheppard filed the Debtor's monthly operating reports with this Court as required and served the same on the appropriate parties.

10. Operations

Sheppard spent a total of 0.3 hour and incurred fees totaling $202.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 9. These fees were incurred in connection with the services Sheppard performed regarding the Debtor's tax returns.

11. Business Operations

Sheppard spent a total of 0.40 hour and incurred fees totaling $238.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 9. These services pertained primarily to the review of the Debtor's budget.

12. Service Lists

Sheppard spent a total of 9.80 hours and incurred fees totaling $2,548.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 12. Throughout the Application Period, Sheppard updated, revised, prepared, circulated and maintained its limited service list, its e-mail service list and the creditor matrix.

13. Tax Issues

Sheppard spent a total of 1.50 hours and incurred fees totaling $1,012.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 13. During the Application Period, Sheppard addressed inquiries from and communicated with the taxing authorities and others regarding the payment of post-petition taxes.

14. Claims Administration

Sheppard spent a total of 4.50 hours and incurred fees totaling $1,575.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 14. Sheppard researched issues related to the deadline to file a proof of claim and reviewed claims filed in this

case.

15.    Claims – Tax

Sheppard spent a total of 0.30 hour and incurred fees totaling $178.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 14.   The services rendered under this Project Billing Category pertain to communication re the tax claims.

16.    Claims - Unsecured

Sheppard spent a total of 0.50 hour and incurred fees totaling $297.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 15.   The services rendered under this Project Billing Category pertain to reviewing the unsecured claims against the directors and officers.

17.    Plan of Reorganization

Sheppard spent a total of .70 hour and incurred fees totaling $507.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 15.   The services rendered under this Project Billing Category relates to communications regarding the exclusivity period.

18.    Bankruptcy Court Litigation

Sheppard spent a total of 162.70 hours and incurred fees totaling $83,243.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 27.  This time related to (1) negotiating the settlements with the FTC and Receiver and documenting those agreements, (2) filing and resolving the litigation with Seven Hills, (3) addressing sale related litigation and disputes, and (4) review and administration of the Tennessee litigation.

19.    Discovery

Sheppard spent a total of 54.20 hours and incurred fees totaling $33,705.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 29.

The services that Sheppard provided under this Project Billing Category pertain primarily to addressing the motion for examination of Ken Dawson, Brendan Philbin and Evan Meyer pursuant to Rule 2004 filed by certain creditors in the case.  Sheppard reviewed the motion and analyzed the matters that are subject of the motion.  Sheppard prepared the pleadings in opposition

of the motion, consulted with other constituencies with respect to the motion and appeared for the hearing on the motion and opposed it. Thereafter, Sheppard worked closely with the individuals subject to the motion in order to prepare them to testify on the Debtor's behalf and defend their examinations.

20. <u>Early Case Administration Motions/Pleadings</u>

Sheppard spent a total of 6.90 hours and incurred fees totaling $4,105.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 30. The services provided in this project billing category included a new motion to extend the exclusivity period during which only the Debtor may propose a plan of reorganization.

21. <u>Federal Court Litigation</u>

Sheppard spent a total of 27.50 hours and incurred fees totaling $19,755.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 32. During the Application Period, Sheppard continued to defend the Debtor in the litigation with the FTC and the Receiver. Counsel for the Debtor met with the counsel for the FTC and Receiver to advance the settlement negotiations. During the Application period, Sheppard communicated with the Committee's counsel regarding the settlement discussions and solicited the necessary support for the Debtor's position.

22. <u>Other Litigation</u>

Sheppard spent a total of 12.10 hours and incurred fees totaling $7,199.50 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 34. Sheppard's services under this Project Billing Category relates to the adversary proceeding against Seven Hills Partners, LLC ("Seven Hills"). The Debtor filed a complaint for declaratory relief and avoidance of post-petition transfer against Seven Hills. The parties have since settled the dispute and the Court recently entered an order approving the settlement.

23. <u>Discovery - Defensive</u>

Sheppard spent a total of 2.80 hours and incurred fees totaling $1666.00 during the Application Period on this Project Billing Category, as summarized on <u>Exhibit B</u>, p. 35. These services pertained to responding to subpoena for production of documents. Sheppard prepared the

responses and objections on behalf of the Debtor.

24.    Responding to Interrogatory Requests

Sheppard spent a total of 0.50 hour and incurred fees totaling $297.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 35. Sheppard's services in this Project Billing Category supplemented those referenced immediately above.

25.    Knudsen Motion

Sheppard spent a total of 2.20 hours and incurred fees totaling $824.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 36. During the Application Period, Sheppard prepared Knudsen Notices for itself and other professionals servicing the Debtor.

26.    Professional's Compensation (other than Sheppard)

Sheppard spent a total of 13.40 hours and incurred fees totaling $4,809.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 37. Most of these services pertained to Knudsen Notices that Sheppard prepared on behalf of other professionals in this case. Also, Sheppard assisted in the filing of their fee applications and related pleadings.

27.    Professional's Employment (other than Sheppard)

Sheppard spent a total of 4.1 hours and incurred fees totaling $1,854.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 38. These preparation of pleadings related to the employment of other professionals in this case.

28.    Sheppard Compensation

Sheppard spent a total of 45.90 hours and incurred fees totaling $18,068.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 41. These fees were incurred mainly in preparing Sheppard's second interim fee application and related pleadings, Sheppard's Knudsen Notices, and Sheppard's notice regarding the voluntary reduction of fees related to the second interim fee application period.

29.    Sheppard Employment

Sheppard spent a total of 3.10 hours and incurred fees totaling $1,707.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 42.  The services under this Project Billing Category pertain to preparation of the supplemental declaration in support of Sheppard's employment.

30.    Asset Disposition

Sheppard spent a total of 511.50 hours and incurred fees totaling $317,754.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 67. Sheppard's services under this Project Billing Category pertain to the sale of the Debtor's principal assets which extended over the entire application period.

Early in the case the Debtor began exploring parties who may be interested in purchasing the Debtor's three operating entities: TBR, ICS and Payment One.  Since the sale involved a possible sale to three different buyers, the sale was complicated.  These three companies have interrelated business operations.  Therefore, as part of the stalking horse sale, it was necessary to prepare "Sharing and Support Agreements" whereby the buyer of one entity, and the other two entities would "support" each other during a transition period.  Sheppard drafted these agreements and also negotiated with prospective bidders.   There was no investment banker hired by the Debtor, so all of the work of making the "level playing field" for the bidders was done by the Debtor's management and Sheppard.

During the Application Period, the Debtor continued to build on its work in the prior months for a sale of its main assets.  As noted above, Sheppard worked closely with the Debtor on devising the bidding procedures intended to generate the highest price for the assets.  Sheppard prepared the motions to approve the bidding procedures, appeared for the hearings and successfully argued those motions. In addition, Sheppard prepared asset purchase agreements and related documents and exhibits, communicated with potential bidders, reviewed adequate assurance packages, responded to interested companies' numerous requests for information about the sale and prepared the sale motions.  Sheppard appeared for and argued the hearings and continued hearings on the sale motions and discussed the sale process with the Committee and the

major constituencies in the case.

## VIII.

### COMPENSATION FOR SERVICES OF LEGAL ASSISTANTS

Professionals may be compensated for the service of their legal assistants under the Guidelines. Sheppard seeks to be compensated or the services provided by one of its legal assistants. The services for which compensation is sought would have had to be done by Sheppard attorneys if not done by Sheppard's legal assistant, and would have been compensable under the Guidelines. The résumé of legal assistant Peter Stone is attached to this Application as <u>Exhibit D</u>. It will show that Mr. Stone is specially trained, has experience in large chapter 11 bankruptcy cases, and is not primarily a secretary or clerical worker.

## IX.

### SUMMARY OF SHEPPARD'S EXPENSES

Sheppard seeks expense reimbursement for expenses totaling $23,557.54. A summary of expenses advanced by Sheppard and a detailed statement of expenses advanced by Sheppard are set forth on the attached <u>Exhibit B</u>, at pages 69-74. These costs include courier services, overnight mail, postage, photocopying, computerized legal research, facsimile and long distance telephone calls, filing fees and transportation. Such expenses are billed to the Debtor's estate at the actual or projected actual cost to Sheppard.

Although Sheppard charges its non-bankruptcy clients for secretarial overtime, word processing costs and incoming faxes, Sheppard has *not* sought recovery of those costs from the Debtor's estate and those items have been deleted from <u>Exhibit B</u>. Sheppard's internal billing system is designed to bill facsimile charges and long distance charges together for all of its clients. Sheppard is thus unable to separate its facsimile and long distance charges for this matter. Sheppard does not charge for facsimile, other than the actual cost of any long-distance phone charges.

Sheppard uses the services of Xerox Corporation ("Xerox") for its in-house photocopy

services. Sheppard has billed the estate at a rate of 20¢ per page for copies, which represents the actual cost that Xerox charges Sheppard. Sheppard sends photocopying and mailing projects to outside vendors when such vendors are capable of providing service to the Debtor more efficiently and economically than Sheppard's in-house service providers. Due to the size of this case, Sheppard used the services of such a vendor frequently during the initial stages of this case as well as for services thereafter which needed to be sent to numerous other entities. Sheppard bills the estate for such projects at the actual cost to Sheppard, a sum that Sheppard believes is reasonable given the nature of the case and the services rendered on behalf of the Debtor.

## X.

## COMPLIANCE WITH GUIDELINES

Except as noted above with respect to the limit on Project Billing Categories, Sheppard believes that it has prepared the Application in compliance with the Guidelines.

Sheppard has not entered into any agreement, written or oral, express or implied, with any other party-in-interest or any attorney for any party-in-interest in the case for the purpose of fixing the amount of any fee or compensation to be paid from the assets of the Debtor's estate.

All compensation and expense reimbursements requested by Sheppard have been billed at rates in accordance with practices no less favorable than those customarily employed by Sheppard and generally accepted by Sheppard's clients.

Pursuant to the Guidelines, Sheppard is serving a true and correct copy of the Application on the Debtor, along with transmittal correspondence inviting discussion, questions, comments, concerns or objections to the Application. A copy of such correspondence dated today's date and addressed to Mr. Ken Dawson, the Debtor's designated responsible individual, is attached as Exhibit E to this Application.

**XI.**

**CONCLUSION**

WHEREFORE, Sheppard prays that the Court enter an order:

(1) granting interim approval of compensation for professional legal services rendered and reimbursement of expenses incurred as counsel for the Debtor from May 1, 2008 through August 31, 2008 totaling $526,928.14, consisting of $503,370.60 in professional fees (which amount is after a voluntary write-off by Sheppard of over $10,500.00 of fees incurred during the Application Period) and $23,557.54 in expenses;

(2) ratifying any payments previously made to Sheppard for that time period pursuant to the Knudsen Order, which payments as of the filing of this Notice and Sheppard's Application totaled $426,254.02, consisting of $402,696.48 in fees and $23,557.54 in expenses pertaining to the period May 1, 2008 through August 31, 2008;

(3) authorizing and directing the Debtor to make immediate payment to Sheppard of all allowed and outstanding amounts approved in its Application but not yet paid to Sheppard; and

(4) granting such other and further relief as the Court may deem just and proper.

Dated: October 17, 2008

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By             /s/ Michael H. Ahrens
                MICHAEL H. AHRENS
          Attorneys for Debtor The Billing Resource,
                   dba Integretel

W02-WEST:5KES1\401042159.2                                THIRD INTERIM FEE APPLICATION