John D. Fiero (CA Bar No. 136557)
Maxim B. Litvak (CA Bar No. 215852)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

Attorneys for The Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>OLD T.B.R., INCORPORATED, f/k/a THE BILLING RESOURCE, dba INTEGRETEL,<br><br>Debtor | Case No.: 07-52890 ASW<br><br>Chapter 11<br><br>**MOTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPOINTMENT OF A FEE EXAMINER PURSUANT TO SECTIONS 105(A) AND 330 OF THE BANKRUPTCY CODE**<br><br>Date: August 31, 2009<br>Time: 1:15 p.m.<br>Place: United States Bankruptcy Court<br>280 South First Street<br>San Jose, CA<br>Judge: Honorable Arthur S. Weissbrodt |

The Official Committee of Unsecured Creditors (the "Committee") for the above-referenced debtor Old T.B.R., Incorporated f/k/a The Billing Resource dba Integretel (the "Debtor") hereby moves the Court for appointment of a fee examiner pursuant to sections 105(a) and 330 of the Bankruptcy Code (the "Motion"). In support of this Motion, the Committee represents as follow:

## I. INTRODUCTION

The professional fees and expenses billed and conditionally approved in this case currently exceed $5.3 million. Nine different sets of professionals have been billing the estate for services over the last twenty-two months. Unfortunately, the estimated estate assets available for distribution to unsecured creditors total only $4.2 million. The Committee is concerned that the professional

fees incurred to date, and those that will be incurred in the future need some independent oversight. Accordingly, the Committee seeks appointment of a legal fee auditing company, Stuart Maue ("Stuart Maue"), to perform a comprehensive examination of the fees incurred by professionals of the Debtor and the Committee.

The Committee has spoken with representatives of Stuart Maue and reviewed their background and credentials. Stuart Maue is willing to perform a fee audit at their regular hourly rates, beginning immediately upon receipt of the legal bills in an acceptable electronic format. While not a cap on their fees, Stuart Maue believes that the cost of an audit of existing fee applications and billing statements will be between $60,000 and $80,000. The Committee believes that Stuart Maue's fee audit could potentially reduce the total professional fees payable from the estate by anywhere from five to fifteen percent (5-15%).

## II. FACTUAL BACKGROUND

**The Bankruptcy Case.**

On September 16, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy.

On October 1, 2007, the United States Trustee appointed the Committee pursuant to section 1102(a)(2). The Committee is presently comprised of the following seven members:[1] (1) Agora Solution Corp., (2) Email Discount Network, LLC, (3) NTE, (4) Telco Billing, Inc., (5) Total I Protect, LLC, (6) InfoSourceUSA, LLC, and (7) American Premium Warehouse, Inc. On October 3, 2007, the Committee selected Pachulski Stang Ziehl & Jones LLP as its general counsel, subject to this Court's approval which was entered by order dated April 28, 2009. To date, no other committees have been appointed in the case.

The Debtor formerly operated as a billing aggregator for small telecommunications companies in the wake of telecom deregulation, providing billing-related services (e.g., billing, collection, telephone inquiries, etc.) to telecommunication companies. In addition, the Debtor provided billing solutions to customers who offered services such as voicemail and online directory listings that were billed through telephone invoices. The complexity of the Debtor's billing and

---

[1] Horizon Telecom, Inc. and Toll Free Voice Mail, Inc. have resigned from the Committee.

collections, together with legal claims filed against the Debtor, have contributed to the need for numerous professionals to assist the Debtor and the Committee in this case.

**The Bankruptcy Professionals.**

The Bankruptcy Court approved the Debtor's retention of the following professionals: (1) Sheppard, Mullin, Richter & Hampton LLP as the Debtor's general bankruptcy counsel; (2) Tighe Patton Armstrong Teasdale PLLC as the Debtor's special counsel in approximately six litigation and administrative matters, including the Florida Action; (3) Holland and Knight, LLP as the Debtor's special litigation counsel and local counsel in the Florida Action; (4) FTI Consulting as the Debtor's financial advisor, with Paul Weber serving as Chief Restructuring Officer; (5) Boult, Cummings, Conners & Berry, PLC as special litigation counsel and local counsel in a tax refund lawsuit pending in Tennessee; (6) Zajac & Perrone LLP as the Debtor's audit and tax consultant; and (7) Hodgson Russ, LLP as the Debtor's special litigation counsel and local counsel in a tax dispute previously pending with the State of New York. The Bankruptcy Court also approved the Committee's retention of (1) Pachulski, Stang, Ziehl & Jones LLP as the Committee's general bankruptcy counsel; and (2) GlassRatner Advisory & Capital Group, LLC as the Committee's financial advisor.

On December 19, 2007, the Bankruptcy Court entered an order approving interim compensation and reimbursement procedures for professionals retained in the case. The order permits professionals, subject to the terms and conditions contain in such order, to be paid 80% of their fees and 100% of their expenses on a monthly basis prior to the allowance of such amounts by the Bankruptcy Court in connection with quarterly or final fee applications. Any payments made pursuant to the interim compensation procedures is without prejudice to a party in interest to object to approval of such fees and expenses pursuant to the quarterly or final fee applications.

As of July 31, 2009, the professional fees and expenses incurred, and approved by the Court on an interim basis, exceed $5.3 million. Sheppard Mullin has received more than $2.5 million; FTI has received more than $1 million; Tighe Patton and GlassRatner have each received approximately $600,000; and Pachulski Stang has received approximately $450,000.

///

///

**Fee Auditing Services of Stuart Maue.**

The fee auditing firm of Stuart Maue is available and willing to act as a fee examiner in this case. Stuart Maue has substantial experience handling reviewing fees in bankruptcy cases, including cases in which the Bankruptcy Court for the Northern District of California has appointed a fee auditor. *See In re Schneider,* Case No. 06-50441 (Bankr. N.D. Cal.) *and In re SonicBlue,* Case No. 03-51775 (Bankr. N.D. Cal.). Additional information regarding Stuart Maue, including its services and experience in other cases, is available at http://www.smmj.com.

The Committee proposes to pay Stuart Maue on an hourly basis, at its customary rates, and to reimburse Stuart Maue according to its customary reimbursement policies. The current hourly rates for attorneys and accountants of Stuart Maue range between $275 and $375. Stuart Maue anticipates that the cost of an audit of fees submitted to date by the professionals in this case will be between $60,000 and $80,000. The Committee believes that the potential savings from an audit will exceed its cost and is in the best interests of the estate and its creditors. The Committee further proposes that Stuart Maue focus its review of fee applications on compliance with the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* and with the Bankruptcy Code. Specifically, if appointed, Stuart Maue should review fee applications for duplication of services, time expended on services and the need for such services, the rates charged for services, the reasonableness of such charges, and any other relevant factors to determine the cost-effectiveness of the fees and expenses incurred.

### III. RELIEF REQUESTED

By this Motion, the Committee respectfully requests that the Court appoint Stuart Maue as an independent fee examiner to review and report on all currently-filed fee applications and any future fee applications filed by all professionals retained by the Debtors and the Committee in this case. The Committee requests appointment of Stuart Maue pursuant to Bankruptcy Code sections 330 and 105(a).

///

///

If Stuart Maue is appointed, it will be necessary for the professionals on a going-forward basis to submit their time detail in an electronic format in accordance with the requirements of Stuart Maue in order for the fee examiner to efficiently access and review future fee applications. The Committee submits that appointment of Stuart Maue is cost-effective and necessary under the circumstances of this case.

## IV. LEGAL ARGUMENT

### A. The Court May Appoint a Fee Examiner Pursuant to Sections 330(a) and 105(a) of the Bankruptcy Code.

Bankruptcy Code section 330 governs compensation of officers of the court, including examiners. Courts regularly appoint fee examiners pursuant to sections 330(a) and 105(a) of the Bankruptcy Code.

Section 330(a) of the Bankruptcy Code authorizes "reasonable compensation" for "actual" and "necessary" services rendered by professionals retained with court approval. In *In re Armstrong World Industries, inc.,* 366 B.R. 278, 280 (D. Del. 2007), the court concluded that it is under a duty to independently examine fee petitions to ensure that they comport with section 330(a). The court observed:

> This duty stems from "the court's inherent obligation to monitor the debtor's estate and to serve the public interest" and "exists notwithstanding an absence of objections by the United States Trustee, creditors, or any other interested party. In fact, it is not uncommon for there to be no objections to fee applications. The court may appoint a fee auditor to aid it in accomplishing this "onerous burden," which the Court has done in this Case.

*Id.* (quoting *In re Busy Beaver Building Centers, Inc.*; citations omitted). Thus, the *Armstrong World Industries* court appointed a fee examiner *sua sponte* to assist with fee examinations. An impartial fee examiner can assist the bankruptcy court and creditors in determining whether fees requested by professionals are "actual and necessary." *See also In re Maruko, Inc.,* 160 B.R. 633 (Bankr. S.D. Cal. 1993) (appointment of fee examiner pursuant to section 105 of the Bankruptcy Code and section 706(a) of the Federal Rules of Evidence); *In re Continental Airlines, Inc.,* 138 B.R. 439 (Bankr. D. Del. 1992), *rev'd in part on other grounds,* 150 B.R. 334 (D. Del. 1993) (appointment of fee examiner pursuant to section 105 of the Bankruptcy

Code).

In this case, the Committee is concerned that the professional fees incurred to date are extraordinary in relation to the assets of the estate. Moreover, the Committee is concerned that the fees will necessarily diminish any distribution to unsecured creditors. For this reason, the Committee requests appointment of Stuart Maue to review and report on the reasonableness of fees that have been, and will be, submitted to the Court and billed to the estate.

### B. California Courts Recognize the Benefit of a Fee Examiner.

California bankruptcy courts recognize the benefit of a fee examiner to the estate where substantial fees are at issue by multiple professionals. The case of *In re Maruko* involved fee applications in excess of $1.5 million where the debtor had assets of more than $100 million. *In re Maruko,* 160 B.R. at 637. The Southern District of California in *Maruko* acknowledged the invaluable assistance of the court-appointed fee examiner, stating:

> At the Court's direction, [Fee Auditor] prepared a written analysis of each interim fee application submitted, which discussed hours billed, duplicate time entries, vague time entries, transient billers and expense requests. They also prepared special reports analyzing time entries spent on "analysis," "review," "inside conferences" and "research," to assist the Court in determining the reasonableness of fees requested… The Fee Examiner's assistance has been invaluable to the Court in addressing the logistical burdens and difficulties of reviewing and reconciling multiple fee applications.

*Id. See also In re Schneider,* Case No. 06-50441 (Bankr. N.D. Cal.) and *In re SonicBlue,* Case No. 03-51775 (Bankr. N.D. Cal.) (appointing fee examiners).

The assets available for distribution to unsecured creditors is estimated at $4.2 million – far less than those of *In re Maruko*.[2] The professional fees that have been incurred to date exceed the estate assets distributable to unsecured creditors. The Committee submits that appointment of Stuart Maue is necessary under these circumstances and will benefit the estate. The Committee recognizes that Stuart Maue will themselves incur fees that will result in administrative expenses. However, the Committee believes that the benefits achieved by their appointment will outweigh any costs.

///

---

[2] Total remaining assets available for distributions to creditors, including administrative expenses, priority and secured claims, and professionals, is estimated at approximately $10 million.

## V. CONCLUSION

For the foregoing reasons, the Committee submits that good cause and sufficient precedent exist for this Court to (1) appoint a fee examiner to review all pending and subsequent fee applications filed by all professionals in this case, and (2) order that all professionals cooperate with the fee examiner by, among other matters, providing relevant fee statements in an acceptable electronic format to the extent such format is available.

Dated: August 4, 2009

PACHULSKI STANG ZIEHL & JONES LLP

By   */s/ John D. Fiero*
     John D. Fiero
     Attorneys for The Official Committee
     of Unsecured Creditors