SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
STEVEN SACKS, Cal. Bar No. 98875
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-9100
Facsimile: 415-434-3947

Bankruptcy Reorganization Counsel for Debtor
and Debtor-in-Possession Old T.B.R., Incorporated,
f/k/a The Billing Resource, dba Integretel

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 07-52890 ASW |
| OLD T.B.R., INCORPORATED, F/K/A THE BILLING RESOURCE, DBA INTEGRETEL, a California corporation | Chapter 11 |
| Debtor. | **DEBTOR'S RESPONSE TO MOTION FOR APPOINTMENT OF CHAPTER 11 FEE EXAMINER** |
| | Date: August 31, 2009<br>Time: 2:15 p.m.<br>Place: United States Bankruptcy Court<br>280 South First Street<br>San Jose, California<br>Judge: Hon. Arthur S. Weissbrodt<br>Courtroom: 3020 |

Old T.B.R., Incorporated, f/k/a The Billing Resource, dba Integretel, the debtor and debtor-in-possession (the "Debtor"), files this Response with regard to the Motion for Appointment of Fee Examiner filed by the Official Unsecured Creditors Committee ("Committee") herein.

### A. The Motion is Premature.

In the first instance, the Motion is premature. The professionals have not filed final fee applications and no fee applications are pending. The Court will also not have determined whether the plan of reorganization jointly proposed by the Debtor and the Committee will be confirmed at the time of the hearing on this Motion.

In addition, the motion fails to account for the fact that most of the professionals in the case have either given a discount on their regular hourly rates from the inception of the case, or have exercised billing judgment in seeking interim awards that have resulted in discounts. After the Plan is considered and final fee applications are submitted, the professionals may make additional billing concessions before a final hearing. As often occurs, the Committee and other interested parties may conclude that potential objections they have to the fees and expenses charged to the estate by the professionals may be obviated by these concessions and that the Committee will conclude that the expense associated with appointing a fee examiner is unwarranted.

Thus, the Court need not and should not determine now whether to appoint an examiner.

### B. A Fee Examiner is Unnecessary

Even if the Court chooses it consider the Motion at this time, it should conclude it is unnecessary to have a fee examiner in this case. The Court has been "hands-on" with regard to all the issues and litigation in this case from the first day it was filed. The Court has reviewed the fees of all professionals in connection with numerous prior interim applications and thus knows what the professionals have done and what they have charged. Each of the interim applications was reviewed with regard to compliance with the Court's and U.S. Trustee's guidelines, which is the function that the fee examiner suggests he

would undertake. The professionals in this case are experienced, very familiar with the guidelines, and have had the assistance of a representative of the U.S. Trustee in ensuring their compliance with them. Under these circumstances, a fee examiner is unwarranted. *See In re AOV Industries, Inc.*, 798 F.2d 491, 495 (D.C. Cir. 1986).

### C. A Fee Examiner Cannot Be Justified Merely by the Amount of Professional Fees and is not Justified Here.

The fees in this case are significant and that is the sole basis for the Committee's request to appoint an examiner. However, the fee examiner will increase the estate's professional fees, not only by the amount charged by the examiner, but also by the time the professionals will spend in working with the examiner to provide information, review the resulting report, and, potentially, litigate the validity of the recommendations. Moreover, the fact that there are substantial professional fees is unsurprising because, as detailed below, the work necessary to bring this case to a conclusion has likewise been significant. Thus, the Court should not appoint a fee examiner without reaching the conclusion that the prospect of additional fees and costs for reviewing fees is justified by more than a desire to put the professionals "through their paces."

The fees in this case have been substantial because several professionals were needed to address the Debtor's legal and financial issues. In addition to nine adversary proceedings in this Court involving the Debtor, as well as appellate proceedings before the District Court, the Debtor has had litigation ongoing during the bankruptcy in the District Court for the Southern District of Florida, the Eleventh Circuit Court of Appeals, Tennessee's state courts, and administratively with the State of New York. The Debtor's financial records were not in order at the outset of the case, and substantial effort was required from the Debtor's financial advisor, FTI Consulting, for the Debtor to be able to file schedules and manage its affairs. The conflict of interest arising from the multiple roles played by Debtor's management required that the Debtor retain FTI's Paul Weber in the additional role of Chief Restructuring Officer. While doing so increased the professional fees, it was necessary, and the costs were at least partially offset by reductions

of the Debtor's personnel expenses.

At the outset, the Debtor faced litigation from the Florida Receiver and the Federal Trade Commission concerning a $1.7 million claim that precipitated the bankruptcy filing even though the Debtor had offered a settlement before the filing that was more beneficial to the Receiver than that ultimately paid by the Debtor. That litigation included several hearings on injunctive relief along with appeals of the Court's injunctions, a motion for a stay pending appeal that was heavily briefed and then argued in the District Court, and full briefing of the underlying case before the Eleventh Circuit. The Debtor faced counsel from the Federal Trade Commission who could devote the resources of the federal government to their efforts, and did.

During the early phases of the case, the issue of cash collateral was extensively and repeatedly reviewed because of the Committee's insistence that the cash collateral orders should be only on an interim basis for brief time periods. The Debtor suggested to the Committee that the Debtor could quickly confirm a plan in which creditors obtained stock in exchange for their claims, but the Committee rejected that in favor of pursuing a sale process for each of the Debtor's three significant assets. The ordinary tasks inherent in these sales were overshadowed by the constant involvement, disputes and litigation with Nelson Gross, acting on behalf of various entities at various times. The Debtor and Sheppard Mullin negotiated and entered into a stalking horse agreement with Public Communication Services, Inc. for the Debtor's operating assets and its ICS subsidiary, obtained a bid procedures order from the Court, litigated the sale process at every turn with Mr. Gross, and ultimately succeeded at a contested sale hearing in selling these assets for over $7 million. While Mr. Gross was the successful bidder for the operating assets, the sale did not close on the agreements that had been negotiated with PCS but instead required more litigation and the heavy involvement of counsel in closing the sale. The ICS sale also ultimately closed, but only after additional negotiations and litigation with the buyer.

The PaymentOne transaction was nearly as complicated and contentious. After the

parties negotiated an agreement with a buyer known as e-Telcharge.com to acquire PaymentOne, and obtained court approval of that sale after yet more litigation with Mr. Gross over the sale process, the buyer proved unable to close the deal. The Debtor, FTI and Sheppard Mullin were extensively involved in negotiating new agreements with a new buyer, litigating the objections to that sale and settlement, and, finally, working with PaymentOne to get the sale closed. Doing so relieved the Debtor of a secured liability in excess of $12 million that would otherwise have deprived the Debtor's creditors of any distribution.

Through this process, the Debtor and Sheppard Mullin have worked closely with the Committee and its counsel to reach the goals that the Committee set. The Committee chose the path of selling the Debtor's assets instead of pursuing quick confirmation of a debt-for-equity plan. The committee chose to make a settlement with Mr. Gross that enabled him to become the buyer of the operating assets, which unfortunately only led to continued litigation and delay as the result of friction with Mr. Gross. While it would have been beneficial to creditors if the assets could have been sold without incurring professional fees or having to first resolve these disputes, that was not possible. Having met the Debtor's and the Committee's goals of liquidating the Debtor's assets, it is not necessary to prolong this case with a fee examination process that is in addition to that envisioned by the Court's fee application requirements.

Throughout the two years of this case, the Debtor has kept the Committee and other parties in interest fully informed of the professional fees being incurred, as the cash collateral budgets, Monthly Operating Reports, and fee applications disclosed the professionals' activities and their fees and costs. The Committee filed no objections to any of these fee applications. Moreover, the Committee has not asserted during the case that the Debtor and Sheppard Mullin were taking the wrong course or that they should not be expending the estate's resources to accomplish these tasks. The Court has ample information about the professionals in this case to enable review of further fee applications and it should deny the Committee's present motion.

| | |
|---|---|
| 1 | DATED: August 26, 2009 |
| 2 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 4 | By    /s/ Michael H. Ahrens |
| 5 | MICHAEL H. AHRENS |
| 6 | Attorneys for Debtor OLD T.B.R., INCORPORATED, f/k/a THE BILLING RESOURCE, DBA INTEGRETEL |

W02-WEST:5SS1\402028413.1

RESPONSE RE MOTION TO APPOINT FEE EXAMINER

-5-